## WALKER ET AL. VS. TOWNS, EX.

If a vendee of real estate resist the payment of the purchase money upon defects of title in the vendor, he must, by allegation and proof, make and sustain specific charges, showing exactly where the deficiency is, who claims title to the land, and that the claim is good—a general allegation that the vendor had no title being insufficient.

Twenty-five years adverse possession of land, without any showing why the statute of limitation does not run, is enough to infer a good title, though it rested only on possession.

If, at the time of the purchase, a vendee has knowledge of a defect of title, he cannot set up such defect to resist the payment of the purchase money.

*Appeal from Hempstead Circuit Court in Chancery.*

Hon. LEN B. GREEN, Circuit Judge.

GALLAGHER and KNIGHT, for the appellants.

On the application of the vendor, equity will not compel the purchaser to take a doubtful title:·and, under this contract, Walker had no right to expect that an unencumbered estate in fee simple would be conveyed to him: and there is nothing shown which places him in position to have forced upon him an unsound title for a sound price, or to oblige him to be satisfied with the possession of the land·alone, without title, and to accept, in place of a conveyance of the land, the mere naked warranty of an executor of the vendor, or even of the vendor himself. 5 *Ves., jr.*, 186, 189, 734; 16 *Ves., jr.*, 272, *and cases cited;* 3 *Munf.* 317; 5 *Paige* 306. And even if the titles are protected by the statute of limitations, Walker, under the contract with Boyd, would not be obliged to receive such titles. *Sug. on Vend.* 237.

The vendor here had contracted to give the vendee a perfect title—the possession, the right of possession, and the right of property, all of which are necessary to a complete title (2 *Hill on R. P.* 177); but was only able to give the possession, the title remaining in the first purchasers from the government.

HEMPSTEAD, for the appellee.

When the payment of the purchase money is resisted on the ground of a defect in the title, the nature of that defect must be shown, clearly and circumstantially, so that the court may see whether it is a substantial defect or not. A defendant cannot, by simply declaring that the vendor cannot make title, put upon him the onus of producing or establishing the title. If the vendee objects and would have relief on that score, he must make not a general, but a specific objection, so as to authorize the court to pronounce and decide upon it. *McGehee vs. Jones*, 10 *Geo.* 127. The doctrine on this subject is correctly stated in *Grantland vs. Wright*, 5 *Munf.* 295, where it was held that a vendee in possession of land, is not entitled to relief against a judgment for the purchase money, nor can

resist its payment on the ground that the vendor's title is not shown to be good. The burden, said the court, is upon the vendee to prove it bad. 3 *A. K. Marsh.* 334. And he must show an actual, outstanding superior title in a third person. *Keyton vs. Brawford,* 5 *Leigh* 39.

The principle is now established, beyond question or doubt, that where there was no fraud in the contract, and where the purchaser remains in possession, he can neither prevent the recovery of the purchase money, nor enjoin its collection, nor indeed have any relief in equity whatever, on the ground of defect of title. He cannot have relief from his contract to pay on the mere ground of defect of title without a previous eviction, or its legal equivalent. 1 *J. C. R.* 213; 2 *J. C. R.* 521; *Rawle on Cov.* 519; 16 *Ark.* 290; 6 *Mar. La. Rep.* 223; 11 *S. & M.* 129; 4 *Texas* 431; 31 *Miss. Rep.* 307.

Mr. Justice FAIRCHILD delivered the opinion of the Court.

Francis W. Boyd sold to Walker his farm, in Hempstead county, with the farming utensils, stock, and twenty-one slaves, for which Walker was to pay fifteen thousand dollars, in five annual installments, the last of which became due the 7th of April, 1848, and was witnessed by a bond for the payment of three thousand dollars, with six per cent. interest from its date, the 7th of April, 1843. Boyd gave a bond for title to the lands, by which he was to make "a full and warrantee deed in fee simple" to the lands "on the completion of the payment" of the fifteen thousand dollars. To secure the payment of the same, Walker also mortgaged to Boyd the slaves he bought from him. All the bonds—each one representing an annual installment of three thousand dollars—but the last, were paid, and upon that two thousand dollars were paid on the 20th of June, 1850. But the residue of it remaining unpaid, on the 20th of April, 1859, the appellee, as the executor of the will of Boyd, began this suit, which is a bill to enforce the mortgage upon the slaves to the extent of the sum due. The will of Boyd was set forth by copy with the bill, by which the appellee claimed that he had authority to make such deed as Boyd, in his bond for title,

agreed to make, and with the bill as amended, the appellee tendered a deed.

The only defense made to the bill is that Boyd had no legal title to three hundred and sixty acres of the land sold to Walker; and that in his lifetime it was not in his power to perform the covenant contained in his title bond, and that the appellee cannot do so, the inability still existing.

Waiving all questions upon the defense being made in the answer to the bill, and upon the effect of the replication to the answer, and considering the subject as if presented by a bill to restrain the collection of the purchase money, as was the case in *Worthington vs. Curd*, 22 *Ark.*, or as in *Bolton vs. Branch*, 22 *Ark.*, which was a case in which a bond for title had been given, and the vendor filed a bill to subject the land to the payment of the purchase money, and the vendee, by cross-bill, asked for an injunction against various proceedings of the vendor intended to pursue his legal and equitable remedies, it may be repeated, as was ruled in those cases, that if a vendee resist the payment of the purchase money upon defects of title in the vendor, he must, by allegation and proof, make and sustain specific charges, showing where the deficiency is, and upon what it rests; who makes claim of title to the land sold, and that the claim is good. In this case there is no allegation of any claim, no reason is given for the general charge contained in the answer that Boyd had no title, and could make no good conveyance to Walker of a part of the lands included in the sale. And there is no proof on the part of Walker to sustain his answer. The evidence of the appellee is not of the highest grade; it is that Hopson owned the land in 1833 or 1834, or some part of it, on which the substantial improvements of the place now are; that Abram Stewart and Andrew Caldwell each owned some of the lands making up the Boyd place; but in general terms it is stated that Hopson owned the place, and sold it to Scroggins, he to Boyd; that Boyd transferred it to Pearsall and Trotter, and took it back from them, and then sold it to Walker in 1843. The general course of transfer of lands

and of business in their sale, is to give written assurance, or conveyance thereof, and when in the circuit court such evidence as we have detailed has been given to show title, no objection to its admissibility or effect can be entertained in this court Two hundred and forty acres of the land, whose title in Boyd is impeached, were confirmed to Stewart in 1828, under a Spanish grant; eighty acres were entered by Andrew Caldwell in 1833 and in 1835, and as to these lands there is no room for inference that their heirs or representatives, other than Boyd, can make any claim to the lands. Twenty-five years adverse possession, without any showing that Stewart left any minor children, and with proof that the youngest of Caldwell's children was thirty years old, are enough from which to infer a good title, though it rested only on possession. Hopson entered forty acres of the land in 1833, and out of the twelve or thirteen children he left behind, about half of them were minors in 1859. That forty acres might be considered as Boyd's under the slight evidence given of the title passing from Hopson by the sale, if such conclusion were necessary, but it is not, as the burden of proof was upon Walker to show that the land belonged to Hopson's heirs, and to do it upon proper allegation. Upon this subject we refer to *Bolton vs. Branch*, before mentioned, and to the authorities therein cited; and to the cases of *Coleman vs. Rowe*, 5 *How.* (*Miss.*) 469; *and Abbott vs. Allen*, 2 *Johns. Ch.* 525.

There is nothing here to induce us to believe that the alleged defects of title were not known to Walker when he took the title bond, as well as when he set up his defence in his answer. This would bring the case within the principle of *Worthington vs. Curd*, 22 *Ark.*, where the authorities are cited upon this point. This principle is applied in *Greer vs. Finucare*, 5 *How.* (*Miss.*) 546, to a vendee holding under a bond for title.

It will be seen that we do not treat this case as one of specific performance, as put for Walker; nor do we find it necessary to decide the points raised by the appellee, that the conveyance and payment of the purchase money were not mutual

acts and dependant upon one another, by reason of the words of the title bond, or of the payments being made in installments. We have examined the authorities upon the latter point, but reserve a decision thereon until it shall become necessary.

The decree of the circuit court, sitting in chancery, sustaining the bill is affirmed.