## NORTHERN PAC. R. CO. v. MONTGOMERY.

(Circuit Court of Appeals, Ninth Circuit. February 7, 1898.)

### No. 369.

1. **LIMITATION OF ACTIONS—BREACH OF WARRANTY.**
   Eviction, either actual or constructive, is essential to a right of action for damages for the breach of the covenant of warranty of title, and the statute of limitations begins to run only from the date of such eviction.

2. **SAME—PURCHASE OF RAILROAD LANDS.**
   Lands selected by a land-grant railroad company, and which had previously been reserved by the secretary of the interior for its benefit, were sold by the company, both parties supposing it had good title. It subsequently appeared that the lands were not included in the grant, and an act of congress was passed asserting title in the government. *Held*, that the statute of limitations against an action for breach of warranty of title began to run, not from the date of the deed, but from the date of the act of congress.

3. **DAMAGES—BREACH OF WARRANTY.**
   Certain railroad bonds stated on their face that they were at all times receivable with accrued interest, at par, in payment for lands of the company at their market price. A contractor received such bonds at par, in payment for work done for the company, and used them in the purchase of lands from the company. In an action for breach of warranty, *held*, that the measure of damages was the face value of the bonds, with interest, and not the market value at the time they were used in the purchase of the land.

4. **SAME—INTEREST.**
   In an action for breach of warranty of title, where the purchaser was never in actual possession of the lands, and never derived any rents or profits or other benefits therefrom, he is entitled to interest from the date of his payment.

In Error to the Circuit Court of the United States for the District of Oregon.

D. T. Crowley, B. S. Grosscup, C. W. Bunn, and Carey & Mays, for plaintiff in error.

Mitchell, Tanner & Mitchell, Stott, Boise & Stott, and Dolph, Nixon & Dolph, for defendant in error.

Before GILBERT, ROSS, and MORROW, Circuit Judges.

ROSS, Circuit Judge. This was a suit for the recovery of damages for the breach of a warranty of title contained in a deed executed by the plaintiff in error to the defendant in error, for certain lands situated in the then territory (now state) of Washington. At the time of the execution of the deed, which was April 10, 1876, it was supposed by both parties thereto that the lands were covered by the grant made to the Northern Pacific Railroad Company,

by the joint resolution of congress of May 31, 1870 (16 Stat. 378). The defendant in error, who was plaintiff in the court below, had built a portion of the Northern Pacific Railroad for that company, in part payment for which work he received from the company certain bonds, known as the "Jay Cooke Bonds," at their face value, aggregating $18,789.58. Those bonds were obligations of the Northern Pacific Railroad Company, secured by a mortgage executed by that company, upon, among other property, all of the lands granted to it by congress. Each of the bonds contained this stipulation: "This bond is exchangeable, at the option of the holder, for registered bond of like tenor and date, and is at all times receivable, with its accrued interest, at par, in payment for lands of the company at their market price." Indorsed upon each of the bonds was a similar notice, in these words: "This bond and accrued interest receivable at all time at par in payment for land of the company at market prices." The plaintiff in the suit accepted the bonds at their face value in discharge of indebtedness of the company to him for part construction of its road, for the purpose and with the intent of exchanging the same for lands of the company at their appraised market value; and he proceeded to select such of the lands supposed by both parties to be within the grant to the railroad company as he desired to purchase. They were unoccupied timber lands, and, when selected by the plaintiff, the company executed to him its deed therefor, with a warranty of title, in consideration of which the plaintiff surrendered to it the bonds; the face value of the bonds and the appraised value of the land being the same, to wit, $18,789.58. As a matter of fact, none of the lands were within the grant to the Northern Pacific Railroad Company, but were embraced by the grant made by congress on May 4, 1870 (16 Stat. 94), to the Oregon Central Railroad Company, which latter grant was declared forfeited by act of congress of January 31, 1885, after which last-mentioned date, and prior to the bringing of this suit, the lands in question were opened to settlement and sale, and were thereafter patented by the government to settlers, pursuant to the laws of the United States. This action not having been commenced until November 2, 1894, the defendant railroad company pleaded in bar of the action the statute of limitations, which raises one of the questions presented by the present appeal.

The statute of Oregon, in which state the suit was brought, prescribes the period of 10 years within which an action upon a sealed instrument must be commenced. Hill's Ann. Laws Or. pp. 131–134. It is contended on behalf of the plaintiff in error that, inasmuch as the Northern Pacific Railroad Company never had any title to the lands in controversy, its warranty of title was broken immediately upon the execution of its deed, and that from that moment the statute of limitations began to run. If so, the action is, of course, barred. The covenant of warranty contained in the deed is in these words:

"And the Northern Pacific Railroad Company, for itself and its successors, doth by these presents covenant, grant, and agree to and with the said James B. Montgomery, his heirs and assigns, that it, the said Northern Pacific Railroad

Company, shall and will warrant and defend the title to the said premises unto the said James B. Montgomery, his heirs and assigns, forever, against the lawful claims of all persons whomsoever."

Eviction, either actual or constructive, is essential to a right of action upon a covenant of warranty of title. Rawle, Cov. (4th Ed.) 148–151. Even if it be true that the mere proof of an outstanding paramount title in the government is, in general, sufficient to show eviction, we do not think it enough under the circumstances of the present case. Here the proof shows, without conflict, not only that both parties to the deed believed the lands in controversy to be covered by the grant to the defendant company, but that the secretary of the interior, acting for the government, so supposing, had, prior to the execution of the deed in question, withdrawn those lands, with others, from the mass of public lands for the benefit of the Northern Pacific Company, which company was permitted to select them under its grant. It was not until after the passage of the act of congress of January 31, 1885, declaring forfeited the grant to the Oregon Central Railroad Company, that the secretary of the interior canceled the selections which had been theretofore made by the Northern Pacific Company of the lands in controversy, and declared the same restored to the public domain, and open to settlement and purchase. Since the forfeiture of the grant to the Oregon Central Railroad Company, declared by congress by the act of January 31, 1885, was for the benefit of the government, it may be that that act constituted a hostile assertion of its paramount title as against the Northern Pacific Railroad Company as well, although the selection of the lands in controversy by the latter company under its grant was permitted to remain of record for some time thereafter, the precise date of cancellation not appearing in the record. But, certainly, January 31, 1885, is the earliest date at which it can be said that there was any hostile or adverse assertion of the paramount title by the government as against the Northern Pacific Railroad Company. Within 10 years from that time the present action was commenced. Some hostile or adverse assertion of the paramount title, and consequent disturbance of the plaintiff's supposed rights, was essential to constitute eviction. Rawle, Cov. (4th Ed.) 146; Loomis v. Bedel, 11 N. H. 74. We are of opinion that the action was not barred by the statute of limitations.

The other question presented by the appeal relates to the proper measure of damages. This arises upon the instructions of the court to the jury, and upon its ruling in respect to certain testimony introduced by the defendant tending to show that, at the time the bonds were used by the plaintiff in paying for the lands, they were not worth exceeding 17 cents on the dollar. In respect to that matter the court below ruled that all of the testimony tending to prove that the bonds were worth less than par at the time of the purchase was immaterial, and constituted no defense to the action, and in its instructions told the jury that the plaintiff was entitled to recover the full amount of the face value of the bonds, with interest thereon at the rate specified therein, to wit,

7³/₁₀ per cent. per annum from April 10, 1876. To the action of the court below in each respect the defendant duly excepted. The verdict was in accordance with the instructions of the court, upon which judgment was entered for the plaintiff in the aggregate amount of $46,405.24. It is, no doubt, true that, in cases where money was the consideration paid for the conveyance, the measure of damages for a breach of a covenant of warranty of title, ordinarily and where there was no fraud, is the purchase money, with interest and costs; but every case must be determined upon its own particular facts and circumstances. Here, as the record shows, without conflict, the defendant company was indebted to the plaintiff in the sum of $18,789.58, for building a section of its road. The government had granted it certain lands in aid of the construction of the road, which lands the company held for sale; and the latter had issued its bonds, secured by its mortgage, and placed them upon sale, each bond reciting upon its face that it was at all times receivable, with the accrued interest thereon, at par, in payment for lands of the company at their market price. Some of those bonds, amounting, according to their face value, to $18,789.58, the plaintiff purchased of the defendant company, in discharge of a money indebtedness, in the like amount, due him from the company. The purchase and sale made were for the very purpose of thereby enabling the plaintiff to acquire from the company certain of its lands at their appraised value. It was in pursuance of that intent that the deed which forms the basis of the present action was executed by the defendant company to the plaintiff. By those acts of the respective parties, they, in effect, declared the true value of the bonds and the lands described in the deed to be the same, to wit, the face value of the bonds, and the value so fixed binds both parties to the transaction.

The incidental question remains in respect to interest allowed the plaintiff under the instructions of the court below, and by its judgment. The eighth assignment of error is as follows:

"The verdict of the jury, rendered under the instruction of the court, is excessive in amount, in that it includes interest from the 10th day of April, 1876, to the 28th day of May, 1896, whereas, under the pleadings and the evidence, the plaintiff was not entitled to any interest until the year 1885. The court also erred in including in the judgment said excessive interest, and the defendant now assigns as error the excessive amount of the verdict in the respect herein stated, and also including in the judgment said excessive interest."

In addition to the facts already stated, the proof shows, without conflict, that the lands in controversy are wild timber lands, not inclosed or cultivated, and that the plaintiff derived no income therefrom, was never on but one or two sections of the land, and, upon the execution of the deed, went to reside at Portland, Or., where he has resided ever since. Never having been in the actual possession of the lands, and never having derived any rents or profits or other benefit therefrom, he received nothing for which to account to the true owner, and nothing as an equivalent for interest on that which he paid for the lands. Under such circumstances, it is quite clear that he was properly allowed interest from

the date of his payment. Graham v. Dyer (Ky.) 29 S. W. 346; Mann v. Mathews, 82 Tex. 98, 17 S. W. 927; Lawless v. Collier, 19 Mo. 480; Wood v. Coal Co., 48 Ill. 357. The judgment is affirmed.