GEREN *v.* CALDARERA.

Opinion delivered May 1, 1911.

1. ESTOPPEL—DEFINITION.—Equitable estoppel is the effect of the voluntary conduct of a party whereby he is absolutely precluded, both at law and in equity, from asserting rights of property, contract or remedy, which might otherwise have existed, as against another person who has in good faith relied thereon and been led to change his position for the worse. (Page 263.)

2. COVENANTS—WHEN NOT BROKEN.—One who purchased land knowing of the existence of an easement thereon can not complain that such easement constitutes an incumbrance within the covenant against incumbrances in his deed. (Page 264.)

Appeal from Sebastian Chancery Court, Fort Smith District; *J. V. Bourland,* Chancellor; affirmed.

STATEMENT BY THE COURT.

On the 25th day of June, 1908, G. Caldarera conveyed by warranty deed to C. N. Geren six lots in block 518 of the Reserve Addition to the city of Fort Smith, Arkansas. The consideration was $12,000, $5,000 of which was paid in cash. The deed contained a covenant against incumbrances except a mortgage on one lot. This action was instituted by S. Caldarera against C. N. Geren to enforce a vendor's lien on the lots in question for the balance of the purchase money. The defendant answered, setting up that the deed from plaintiff to him contained a covenant against incumbrances except a certain mortgage mentioned in the deed; that some time after the execution of the deed and after he had entered into possession of the lots he discovered that a certain railroad company had a perpetual easement for a switch track over two of the lots embraced in the deed; and he alleges that this constituted a breach of the covenants in his deed, for which he asks damages.

Joe H. Lindsey negotiated the sale of the property in question from plaintiff to defendant. He testified that defendant told him that he preferred property with a switch track on it, and would not consider some property shown him because it did not have track facilities; that defendant examined the property before he purchased it; that the switch track was then there, and that defendant made a close examination of it and measured it and the amount of ground it covered and its course over the lots;

that he knew the switch track connected with the main line of the Fort Smith & Western Railroad; that defendant asked him if plaintiff had given the railroad company a deed to the ground occupied by the track, and he told him that plaintiff had not given any deed, but that he and Mr. Cornish, who owned adjacent property, had made some kind of an agreement for the railroad to build in there and that he did not know the nature of the agreement. He denied that he told defendant that the agreement between plaintiff and the railroad company in regard to the switch track was a mere verbal agreement, and that the railroad company could be put off at any time.

Other evidence was introduced by the plaintiff tending to show that the fact that the switch track was located on the lots increased their value.

The defendant, Geren, testified that he examined the lots before purchasing them, and knew that the switch track was there. He admitted that he did not talk to plaintiff about it, but said that he asked Lindsey on what terms the railroad was there, and Lindsey told him that it was just a verbal deal; that if he did not want the railroad on there he could move it off. On cross examination he was asked: "Did you tell him (referring to Lindsey) that you wanted to buy property that had a switch track on it?" and he answered: "Now, in talking to him about different pieces of property, the switch track of course was mentioned, and I of course recollect telling him that property with switch tracks from the Frisco would be much more valuable than from these other roads. I probably told him that I would prefer property with a switch track on it. It was much more preferable." After defendant purchased the property, he built a business house on it, abutting the switch track so that goods might be unloaded from the cars into the house, and used the switch track in his business, loading and unloading his goods in cars placed there for that purpose. He says, however, the building so erected was only a temporary structure, and, had he known that the railroad had a permanent easement for the switch track, he would not have purchased the property. Defendant also introduced testimony tending to show the amount of damages he suffered on account of the alleged breach of covenant.

Other evidence will be referred to in the opinion. The

chancellor found for the plaintiff, and a decree was accordingly entered in his favor. The defendant has appealed.

*Winchester & Martin,* for appellant.

The conveyance by Caldarera granting to the railroad company the right-of-way is an easement which is an incumbrance upon the lots conveyed by him to appellant; and his covenant against incumbrances in his deed to appellant was broken the moment he delivered the deed. 2 Warvelle on Vendors, § § 971, 975; 74 Ark. 348; 65 Ark. 103, 105. The fact that Geren knew the track was laid upon the property does not prevent his recovery upon the covenant against incumbrances. 13 Ark. 522, 526, 532; 65 Ark. 103; 69 Ark. 562, 568, 569, 570.

*Read & McDonough,* for appellee.

1. The writing complained of is not a perpetual easement, but a mere license, or right held at will. While licenses are usually created by parol, yet they may be created by deed, and when so created they are to be considered according to their meaning. They have the same effect whether in writing or in parol. 51 N. H. 485; 53 Hun 169; Kerr on Real Prop. § 2209; 25 Cyc. 640; 145 Mass. 1; 6 N. Y. S. 108; 7 Barb. 74; 14 Cyc. 1144. The instrument, being a mere license, was revoked by the sale. 74 Ill. 183; 51 N. H. 485. A right-of-way may be a mere license. 109 Ind. 586. A right-of-way to an individual is the same as a right-of-way to a railroad. 51 N. H. 485 and cases cited; 12 Kan. 257; 150 Mass. 19.

2. The alleged easement is not an incumbrance, within the meaning of the law. 4 Mass. 267. Neither is it an incumbrance within the meaning of the deed. The contract, even if it be an incumbrance, affects the physical condition of the premises, was open and visible to the eye, and, therefore, is not an incumbrance within the meaning of the warranty in the deed to appellant. 112 Pa. 315; 22 Wis. 628; 112 Pac. 108; Brewster on Conveyancing, § 203; 94 Ark. 599. See also 119 N. Y. S. 464; Maupin, Marketable Titles, § § 85 and 117; 51 Ia. 321; 9 Watts 152.

3. The judgment should be affirmed because appellant can not in any event be entitled to anything more than nominal damages. 65 Ark. 103. The measure of damages is the *injury,* and none is proved; on the contrary, the proof is that lots are en-

hanced in value by reason of the switch track being there, and appellant admits that he wants it there.    58 S. E. 759; 109 Pac. 1034; 45 S. W. 75; 2 Devlin on Deeds, § 916 and authorities cited.

HART, J., (after stating the facts).    There is a direct conflict in the authorities as to whether the existence of an easement for a railroad right-of-way is a breach of the covenant against incumbrances in the deed of conveyance.    Counsel have cited the authorities bearing on the question in their respective briefs. See also 11 Cyc. pp. 1067, 1116 and 1124.    We do not deem it necessary to decide that question.    We hold that under the facts of the case at bar the defendant is estopped from claiming that the easement of the railroad over the lots in question is an incumbrance, because defendant not only purchased the property in contemplation of its physical condition, but because of such condition.    "Equitable estoppel is the effect of the voluntary conduct of a party whereby he is absolutely precluded, both at law and in equity, from asserting rights which might perhaps have otherwise existed, either of property, of contract, or of remedy, as against another person, who has in good faith relied upon such conduct, and has been led thereby to change his position for the worse, and who on his part acquires some corresponding right, either of property, of contract, or of remedy." 2 Pomeroy's Equity Jurisprudence, § 804.    Mr. Pomeroy also says that "an estoppel determines the right which a person may enforce by action or rely on in defense, and not the mere mode and means by which those rights may be proved," and in this view the doctrine of equitable estoppel is not a branch merely of the law of evidence.    *Ib.* § 801.    The undisputed evidence in this case shows that the defendant had knowledge of the easement when he purchased the property.    Lindsey, who negotiated the sale, says that some time elapsed between the time he first showed defendant the property and the time the purchase was made; that he attempted to show him other property, and defendant declined to look at it because it had no switch track on it.    Then, too, this property was situated in that part of the city set apart for wholesale and manufacturing enterprises, and where switching facilities added to the value of the property for such use. The defendant himself admits that he told Lindsey that he pre-

ferred purchasing property with a switch track on it. He now claims, however, that Lindsey told him that the switch was only located there temporarily, and he could have it removed whenever he wished to do so. Lindsey denies this, and stated that while he was negotiating with defendant for the sale of the property defendant asked him about the switch, and he told him that there existed some kind of an agreement between plaintiff and Cornish, the owner of adjacent property, and the railroad company in regard to the switch, but he did not know what it was. He further stated that defendant made a careful examination of the switch and measured the ground occupied by it. He also said that the defendant measured the remaining ground to see what size buildings could be put on it. This defendant does not deny. Defendant also states that he purchased the property for speculation. The preponderance of the evidence shows that property in that locality is only suitable for manufacturing industries or wholesale business, and that the existence of a switch track on such property adds to its usefulness for that purpose and consequently to its value. It is evident from the testimony that the existence of the easement of the switch track was an inducement to defendant to purchase the property. He purchased the property in contemplation of its physical condition and with reference thereto. He wished to purchase property with a switch track on it, and he got what he wanted. He can not now turn around on his grantor and complain that the covenant against incumbrances was broken by the existence of an easement which he knew about when he purchased the property and the continued existence of which was one of the inducements which caused him to make the purchase. Such attempt is unjust and inequitable; and defendant is estopped from claiming that the existence of the easement is an incumbrance, which is a breach of the covenants contained in his deed.

The principle here invoked was recently applied by the court in the case of *Soudan Planting Co. v. Stevenson,* 94 Ark. 599.

The decree will be affirmed.

KIRBY, J., dissents.