THOMPSON *v.* WILHITE, ADMINISTRATOR.

Opinion delivered November 5, 1917.

1. ESTOPPEL IN PAIS—DEFINITION.—An estoppel *in pais* is conduct intended and calculated to induce, and in fact inducing, another person to alter his condition so that it would be a fraud on him to allow the other person to take an inconsistent attitude to his detriment.

2. DOWER—ACT OF WIDOW—ESTOPPEL.—*Held,* under the facts, that a widow was estopped from claiming dower in the funds of her husband in the hands of his administrator, and which he had used in paying the debts of the estate.

Appeal from Mississippi Circuit Court, Chickasawba District; *W. J. Driver*, Judge; affirmed.

*R. A. Nelson,* for appellants.

1.   Appellants are not estopped to claim their rights, nor were they waived by any acts or conversations.   16 Cyc. 679.

2.   The court erred in its instructions.   15 Ark. 41; 96 *Id.* 222.

· *W. D. Gravette,* for appellee.

1.   Appellants are estopped.   The instructions are not set out nor abstracted.   But the jury were properly instructed and the evidence sustains the judgment.   Appellee paid the debts under the instructions of the widow. It was then too late to claim dower.

WOOD, J.   W. H. Needham died in December, 1912, leaving his wife and daughter.   After his death his wife, Eliza, married Thompson, and his daughter, Gertrude, married Jones.   In January, 1913, B. H. Wilhite was appointed administrator of the estate of Needham.   On the 30th of October, 1915, the administrator filed his first and only report, showing certain amounts received and collected by him for the estate, and certain amounts paid out.   Appellants filed their exceptions to the report, which exceptions were sustained by the probate court, and the administrator appealed to the circuit court, where the judgment on the exceptions was in favor of the appellee, and the appellants have prosecuted this appeal.

The only issue presented on this appeal is whether or not the appellant Eliza Thompson, as the widow of Needham, was entitled to a dower interest of $377.45 out of the estate of Needham.

The undisputed testimony shows that at the death of Needham there was realized out of the personal property of his estate the sum of $1,132.45.   The appellee, administrator, contends that at the request of Mrs. Needham he used the money coming into his hands of the estate for the payment of debts, and that she is estopped by her conduct from claiming her statutory dower in this money.   The appellant, Eliza Thompson, on the other hand, denies this contention, and claims that she is not

estopped, under the facts, from claiming her statutory dower. The testimony on this issue is substantially as follows:

At the death of her husband Mrs. Needham and her attorney called upon Mr. Wilhite and asked him to act as administrator of the estate. She did not tell him anything about selling the property or paying the debts; did not instruct him to pay the debts. Needham never told her what he wanted. He did not owe many bills. There was a $1,000 insurance policy, made payable to his estate. She did not tell Mr. Wilhite that Mr. Needham had this policy made payable to his estate in order to have his debts paid. She did not mind the honest debts being paid. After the death of her husband she lived with a man by the name of Fields, who married her aunt, until about two days before she married Thompson. She never told Fields that she wanted Wilhite to pay the debts. She never told him that Wilhite was giving her all the information she wanted about the matter. She stated that she had complained about the way Wilhite had managed the estate before she married Thompson. The first attorney she consulted with reference to her affairs after the death of her husband was Mr. Rodgers. She paid Mr. Rodgers his fee. Her husband told her before his death that he had paid Rodgers for the services that Rodgers had rendered him, and that her husband did not owe Rodgers any attorney's fee. She was relying upon the advice and counsel of Rodgers in the settlement of her husband's estate. Rodgers procured for her an order on the administrator to refund to her the funeral expenses which she had paid, and also secured an order for the administrator to pay her the sum of $300 as the widow's allowance. She had received a letter from Mr. Rodgers stating, in substance, that he had procured these two orders, and that he would file another petition to determine her further interest in the estate, and stating that his fee for this service was $50, which amount she paid to Rodgers. She stated that she did not, with the administrator, check over any accounts against the Needham estate or

authorize the administrator to use her interest to pay Needham's debts.

Witness Wilhite testified that he became administrator of the estate upon the solicitation of Mrs. Needham. The personal property of the estate consisted of an insurance policy for $1,000 and a small stock of goods, amounting to $132. He had paid out $1,026.17 on claims against the estate filed with him. Mrs. Needham instructed him to pay these claims; told him the reason Mr. Needham had the policy made payable to his estate was for the purpose of paying his debts. Nothing could be ascertained from the books and Mrs. Needham went over the accounts with witness; told him which ones to pay and which not to pay, and he paid what she told him to pay. After paying these claims there was a balance in his hands of $131.43. Witness was appointed administrator in January, 1913, and did not file any report until October 30, 1915. None of the accounts against the estate are marked "filed." Witness thought that none of the accounts paid by him were presented later than a year after he took out letters of administration. He took the whole thing over on October 30, 1915, and filed it with the clerk of the probate court, and then carried it all back to the bank with him.

The report does not show the dates that the claims were filed, but does show the dates that they were paid. The court never directed him to pay the claims, but witness paid them under the instructions of Mrs. Needham.

Rodgers testified that he was a practicing lawyer in Blytheville; that he had represented Mr. Needham during his life in a legal matter, and that he represented the administrator in some matters after the death of Needham. He assisted in the collection of the insurance policy on the life of Needham; that Mrs. Needham came to his office a short time after the death of Needham and said something to him about taking the administration of the estate; that he would not do it, and she suggested Mr. Wilhite. They went to see him and Mr. Wilhite at first refused to accept it, but finally agreed to do so. Mrs. Needham

said there would be very little in this, as there was only a policy of insurance to collect and a small stock of goods; that it was her desire for this money to be used for the payment of Needham's debts. She never at any time told witness to tell Mr. Wilhite to pay the accounts against the estate. Witness advised her that she was entitled to be reimbursed for the amount she had paid for the funeral expenses and also $300. He did not advise her that she was entitled to one-third of the personal property, because she did not ask him about it. He wrote Mrs. Needham the letter referred to in her testimony in regard to protecting her interest, but such letter referred to her rights of homestead, and not to her rights of dower. He stated in the letter that he was to file a petition to determine her further interest in the estate. Witness knew that the homestead was exempt to the widow and minor child.

Fields testified that after the death of Needham, Mrs. Needham lived with him. She talked with him about the administration of the estate; stated to him that she wanted her husband's debts paid; that she was satisfied with the way Wilhite was handling the estate; that he never heard her complain until after she married Thompson. Witness did not become angry at Mrs. Needham after her marriage with Thompson. Mrs. Needham told witness that she had been treated nicely by Mr. Wilhite.

Witness Anthony testified that he was the bookkeeper of the Bank of Blytheville and heard a conversation between Mrs. Thompson and Wilhite regarding the estate; that he had seen them going over the accounts together; that he had heard her say she wanted Mr. Needham's debts paid.

The appellant, Mrs. Thompson, was recalled and testified that Mr. and Mrs. Fields told her that if she married Thompson they would "turn the back of their heads on her forever."

Under the above evidence it was an issue of fact as to whether or not the appellant, Mrs. Thompson, was estopped by her conduct from claiming her dower in the

personal property of the estate of her deceased husband. The instructions are not abstracted, and we must therefore presume that the trial court submitted this issue under proper instructions.

(1)    An estoppel *in pais* is conduct intended and calculated to induce, and in fact inducing, another person to alter his condition so that it would be a fraud on him to allow the other person to take an inconsistent attitude to his detriment. *Scharfenberg* v. *Town of New Decatur*, 47 So. 95, 155 Ala. 651.

Equitable estoppel (estoppel *in pais*) "is the effect of the voluntary conduct of a party whereby he is absolutely precluded, both at law and in equity, from asserting rights which might perhaps have otherwise existed, either of property, of contract, or of remedy, as against another person, who has in good faith relied upon such conduct, and has been led thereby to change his position for the worse, and who, on his part, acquires some corresponding right, either of property, of contract, or of remedy. The conduct must be done with the intention, or at least with the expectation, that it will be acted upon by the other party, or under such circumstances that it is both natural and probable that it will be so acted upon." 2 Pom. Eq. Jur., § 804, cited and quoted in *Geren* v. *Calderera*, 99 Ark. 260, 263. See also Words & Phrases, "Estoppel in Pais," 366 *et seq.;* 16 Cyc. 679; *Rogers* v. *Galloway Female College*, 64 Ark. 627, 639.

(2)    Under the above familiar doctrine of *estoppel in pais*, the jury, under proper instructions, were justified in finding that the appellant, by her conduct, was estopped from claiming dower in the funds in the hands of the administrator and which he had used in paying the debts of the estate. The judgment is therefore affirmed.