### QUINN *v.* LEE WILSON & Co.

### Opinion delivered December 16, 1918.

1.  COVENANTS—RUNNING WITH LAND—EVICTION.—Covenants of warranty of title run with the land, and ordinarily a right of action does not arise in favor of the grantee or subsequent holder of the title until there has been an eviction under title paramount.

2.  LIMITATION OF ACTIONS—ACCRUAL OF ACTION ON COVENANT OF WARRANTY.—Where title to land conveyed with covenant of warranty is in the government, covenant is deemed broken as soon as made, and the right of action accrues at once, and sets the statute of limitation running.

3.  LIMITATION OF ACTIONS—ACCRUAL OF ACTION ON WARRANTY.— Where unserveyed lands which were within the boundary lines of a non-navigable lake as meandered, were conveyed with covenants of warranty by defendants, who took under patents to parts of sections surrounding the meandered lines of the lake, and the Land Office then disclaimed title in the government, *held* that defendants had such *prima facie* title that the covenant of warranty cannot be deemed broken when made, so as to start limitation and preclude recovery because of the bar of the statute of limitations, where the government later asserted title to the lands.

Appeal from Mississippi Circuit Court, Osceola District; *W. J. Driver,* Judge; affirmed.

*Davis & Costen* and *H. R. Boyd,* for appellants.

1. The action is barred by limitation. There was a breach of warranty at the instant the deed of Quinn and others was executed and delivered and the statute began to run. The title was in the U. S., 32 Ark. 714, and cases cited; 33 *Id.* 593, 598; 59 *Id.* 634; 74 *Id.* 351; 17 L. R. A. (N. S.) 1183-4 and note.

2. The contract of January, 1911, did not take the case out of the statute. It was void for want of consideration and because the covenant of seizin was broken as soon as the deed was made. The covenant was personal and does not run with the land. 2 Ark. 132; 95 *Id.* 432, 441-2; 98 W. S. 56; 8 How. 451 (12 L. Ed. 1151-2-3-4) and note; 7 R. C. L., note, 111, 1133, 1143.

*Charles T. Coleman,* for appellee.

1. The action is not barred. The limitation did not begin to run until eviction under paramount title. 11 Cyc. 1134. Until eviction there was no breach of warranty and no cause of action arose. 1 Ark. 313; 8 *Id.* 368; 65 *Id.* 495.

2. The title was not in the U. S. and the lands were not subject to homestead entry. 59 Ark. 629. The title was in the riparian proprietors. There was no eviction and the action is not barred. 86 Fed. 253; 88 Ark. 37, 50. *Prima facie* the State acquired and conveyed the bed of the lake and title was in the State's grantee. The title was in the plaintiff. 128 U. S. 691; 158 *Id.* 256; 197 *Id.* 510; 23 Tex. 291; 12 Johnson, 77; 96 Ia. 414; 40 Minn. 455; 54 *Id.* 290; 2 Farnam on Water, etc., § 422. The statute did not commence to run until 1914. The title was in plaintiff until the decree in *U. S.* v. *Wilson & Co.* That decree vested the title in the U. S.

3. If the bar attached defendants acknowledged their liability a short time before suit. There was an acknowledgment of the debt by the agreement. 12 Ark. 762; 22 *Id.* 217; 26 *Id.* 540.

4. · The cases cited for appellants confuse a covenant of warranty with covenant of seizin. Covenants of seizin are personal and do not run with the land, while covenants of warranty do. 7 Ark. 132; 1 *Id.* 313. To constitute a breach of seizin eviction is not necessary—a covenant of warranty is not broken until eviction by title paramount 8 Ark. 368. The defense of limitation is without merit.

McCULLOCH, C. J. This is an action to recover damages for breach of a covenant of warranty of title to lands conveyed in a deed executed by appellants to the grantors of appellee.

The facts of the case are undisputed. On November 24, 1900, appellants, by deed containing full covenants of warranty of title, conveyed 835.81 acres of land in Mississippi County, Arkansas, to R. E. L. Wilson and S. A. Beall. The lands so conveyed were within the meandered boundary lines of Moon Lake, a small non-navigable lake, and were then what is known as unsurveyed lands —that is to say, they were not shown on the plats of the government surveys. Beall conveyed his interest in the land to Wilson on July 26, 1903, and the latter conveyed to appellee, a corporation, in February, 1910. On August 4, 1911, the government of the United States instituted an action in the district court of the United States for the Eastern District of Arkansas against appellee to quiet its title to the lands herein referred to, and on trial of the cause the contention of the government was sustained and a decree was rendered in its favor, which decree was subsequently affirmed by the Circuit Court of Appeals. Appellee then commenced the present action against appellants to recover damages on account of the breach of the covenant of warranty in the deed.

It is conceded by appellants that they had no title to convey by reason of the fact that the title to the lands was in the United States, and the only defense set forth is that the covenant of warranty was immediately broken upon the execution of the deed, and did not run with the

land, and that a right of action then arose in favor of the original grantees and is barred by the statute of limitations. Covenants of warranty of title are universally held to run with the land, and ordinarily a right of action does not arise in favor of the grantee or subsequent holder of the title until there has been an eviction under paramount title; but an exception to this rule is that where the title is in the government the covenant of warranty is deemed to be broken as soon as it is made, and the right of action is complete at that time, and the statute of limitations begins to run. *Abbott* v. *Rowan,* 33 Ark. 593; *Dillahunty* v. *Railway Company,* 59 Ark. 629; *Seldon* v. *Dudley E. Jones Company,* 74 Ark. 348; *Crawford County Bank* v. *Baker,* 95 Ark. 438. Judge Riddick, speaking for the court in *Dillahunty* v. *Railway Company, supra,* said that one of the reasons for the exception was "that the United States should be considered as always asserting title to their lands."

Learned counsel for appellee contends that under the peculiar facts of this case there was not an assertion of paramount title on the part of the government so as to constitute constructive eviction prior to a re-survey of the lands by the government, and the institution of the government's suit against appellee to quiet its title to the same. We think this argument is a sound one, and that appellee's position in the matter should be sustained. In the case of *Little* v. *Williams,* 88 Ark. 37, we were dealing with the title to unsurveyed lands of this same character, and we held that the effect of the patents issued by the United States to the parts of section surrounding the meandered lines of a lake vested *prima facie* title to the bed of the lake by virtue of riparian rights, and that unless "the government elects to correct the mistakes in the original survey and assert claims to the lands, no one can complain or dispute the title of the holders of the *prima facie* title." The facts of the present case were precisely the same at the time appellants executed the conveyance in question and the government of the United States had taken no steps to correct the mistakes of the

original surveyors who indicated the bed of the lake to be water when it was in fact land. The mere ownership by the government did not, we think, constitute such assertion of ownership as would be deemed to constitute constructive eviction.

The principle announced by the United States Circuit Court of Appeals for the Ninth Circuit in *Northern Pacific Railroad Company* v. *Montgomery*, 86 Fed. 253, is applicable to the facts of the present case and ought to control. That case was a suit by Montgomery against the Northern Pacific Railroad Company to recover damages for breach of a covenant of warranty of title to lands which the railway company did not own, but which had previously been granted to another railway corporation by the United States government. Subsequent to the conveyance to Montgomery the government of the United States, by Act of Congress, declared the former grant to the other railroad company forfeited and Montgomery brought his action on the covenant of warranty within five years after the government asserted its ownership, after the declaration of forfeiture. The court held that the action was commenced within due time and was not barred. The court decided that while the title was in the government, there could not have been a hostile assertion of the paramount title prior to the date of the declaration of forfeiture and cancellation of the prior grant to the other railroad company. So in the present case, we say that at the time of the conveyance by appellants to the grantors of appellee the *prima facie* title rested in the owners of the adjoining lands by virtue of apparent riparian rights. There was no actual assertion of title by the government —on the contrary, the proof shows that when applied to at that time the commissioner of the Land Office at Washington disclaimed title in the government—and the ownership of the government as subsequently developed by the re-survey did not then constitute an assertion of title.

The appellee acquired title to the land under *mesne* conveyances from appellants' grantees before the gov-

ernment's assertion of title. Therefore, the right of action arose in favor of appellee and was duly prosecuted within the period of limitation.

The judgment of the circuit court was, therefore, correct, and the same is affirmed.