TEXAS COMPANY *v.* SNOW.

Opinion delivered February 21, 1927.

1. EVIDENCE—VARYING WRITING BY PAROL.—The general rule is that parol testimony is inadmissible to vary or contradict the terms of a written agreement or contract.

2. EVIDENCE—PAROL EVIDENCE TO VARY DEED.—While parol evidence is admissible for the purpose of showing that the true considera-tion is different from that expressed in a deed, it is not admissible to show that a deed warranting against all claims was not intended to warrant against a specific claim.

3. COVENANTS—KNOWLEDGE OF INCUMBRANCE.—Knowledge or notice, however full, of an incumbrance or of a paramount title does not impair the right of recovery upon covenants of warranty, as they are taken for protection and indemnity against known and unknown incumbrances or defects of title.

4. ESTOPPEL—CONDUCT.—Evidence *held* to sustain a finding that plaintiff was estopped by its conduct from recovering for breach of a covenant of warranty.

Appeal from Union Chancery Court, Second Divi-sion; *George M. LeCroy,* Chancellor; affirmed.

*Mahony, Yocum & Saye,* for appellant.

*T. J. Gaughan, J. T. Sifford, J. E. Gaughan* and *Elbert Godwin,* for appellee.

MEHAFFY, J. The Texas Company brought suit in the Ouachita Circuit Court against D. V. Snow and others, to recover for a breach of a covenant of warranty in a warranty deed conveying 80 acres of land. The plaintiff alleged that, in February, 1923, it purchased from the defendants the north one-half of the northwest quarter of section 30, township 15 south, range 16 west, for the price of $10,000, which it paid the defendants. It is alleged that the defendants executed and deliv-ered a warranty deed whereby they warranted the title to said property, and agreed to defend title against claims of all persons. Plaintiff alleged that, at the time of the delivery of the deed, the defendants were not the owners of the land, but that it was owned by others, who had since obtained judgment and decree for the recovery of said land. Plaintiff prayed judgment for the $10,000,

with interest. It afterwards filed an amendment to its complaint, claiming the sum of $2,250, expended as attorney's fees, and $250 as costs.

Defendants filed answer and cross-complaints and motion to transfer to equity. The cause was transferred to equity. The defendants, in their answer, admitted executing and delivering the deed described in plaintiff's complaint, and admitted the judgment obtained for the recovery of the land after the execution of the deed, but they denied that plaintiff was entitled to recover the $10,000. They alleged that, prior to the negotiations referred to by the plaintiffs and defendant, suit had been filed in the Ouachita Chancery Court by Adam and Mary Ann Reaves, claiming that they were the owners of the land, and that the plaintiff in this suit was well aware, and had full knowledge of the claim of said Adam Reaves and wife, and agreed to purchase unconditionally and without a covenant of warranty, and subject to the pending litigation; that the plaintiff made an agreement to purchase the lease from the defendant unconditionally and without a covenant of warranty, subject to said pending litigation and subject to an exception or reservation of one-eighth of all oil, gas and other minerals in, under and upon said land, and, in addition, agreed to take charge of said litigation, as agent for said defendants and for itself, for the sum and price of $10,000; that these defendants agreed to accept that sum, and executed a deed of conveyance unconditionally, and without a covenant of warranty, excepting and reserving one-eighth of oil, gas and minerals, and to turn over to plaintiff, as their agent, the control and management of said litigation. They alleged that the plaintiff took actual possession of the land on oral agreement, on or about the 15th day of December, 1922, erected tanks, structures, etc., on said land, and employed counsel to represent it and these defendants in said pending litigations, and that all this occurred more than a month before the deed was executed. They alleged that, in the sale of the lands, the same attorney represented both the defendant and the

plaintiff, Gordon, in passing upon the sufficiency of the title, and that said attorney made a requirement that, in addition to the conveyance to be executed by Gordon, the executor, the same should be executed by all the heirs and legal representatives of the said George R. Ritchie; that the deed of conveyance was prepared by an attorney, and, by mutual mistake of all parties, a warranty deed in form was prepared and executed by the defendant, and that the covenant of warranty in the deed was without consideration, and void. They further stated that, as a part of the consideration, the Texas Company agreed to take charge, as agent of defendants and for itself, of the control and management of the litigation, and that defendants, in keeping with this agreement, turned over the control and management to plaintiff as their agent, and that plaintiff employed attorneys and immediately took charge and control of said litigation. Defendants further stated that, after the plaintiff took charge, Adam Reaves and his wife made an offer to release and relinquish all their rights, title, claim or interest to the plaintiff for $4,000; that plaintiff did not inform these defendants of the offer, and that said litigation could have been compromised and settled by the defendants had it not been for the grossly negligent conduct of plaintiff, and that, by reason of the fiduciary relations existing between the defendants and plaintiff, plaintiff was under legal obligations to report said offer to them, and that plaintiff was grossly negligent in refusing and failing to do so; that, if plaintiff had informed defendants, they would have accepted compromise of $4,000 and thereby saved the one-half royalty on gas, oil and minerals, and that this was worth $30,000, and asked judgment for $30,000 against the plaintiff.

Plaintiff filed an answer to cross-complaint, denying the allegations of said cross-complaint. The appellees contend that there was a mutual mistake by reason of which a warranty deed was given, warranting against all claims, when all parties understood, at the time the agreement was made, that Adam Reaves and his wife were

claiming that a deed they had previously executed was, in fact, a mortgage, and had already filed suit to redeem. About this fact there does not seem to be any conflict in the testimony. The deed was executed about the 3d day of February, 1923, and on the 1st day of December, 1922, Adam Reaves and his wife had filed suit in the Ouachita Chancery Court, alleging that they were the owners of the land in controversy in this suit, and that the deed executed by them was, in fact, a mortgage, and praying for a decree authorizing them to redeem. The fact that the Reaves suit was filed, seeking to redeem this land, before negotiations began, or during the negotiations, between appellant and appellees, with reference to the sale of this land, and that all parties knew about it, seems to be undisputed. The negotiations between appellant and appellees began some time in December, after the Reaves suit was filed, and the Reaves suit was discussed, and it appears that Gordon stated in his testimony that Mr. Redditt, who represented the Texas Company, knew that the Reaves suit was filed, and that it was pending at the time the trade was closed. Gordon told him at the time that he did not suppose they could deliver the deed, because this suit had been filed, and stated in his testimony that Mr. Redditt asked him about the nature of the suit, and he outlined it to him, and that later Redditt came back, and they had several conversations, and, about the fourth talk that they had about the first of December, Mr. Redditt came with his final statement of what the Texas Company would do. He stated that they would buy the 80 acres with the suit pending, subject to the suit, and they would take care of the lawsuit themselves.

Mr. Redditt himself testified that he knew the Reaves case was pending before the deal was finally consummated, but he did not think that Reaves had a chance to win. He stated that he learned of the suit some time in December; that he already knew about it when he talked to Gordon. He also stated that Gordon told him that they were not going to spend any money trying a lawsuit, and that Redditt told him that they would fight the lawsuit. It

also appears from the testimony that a proposition to settle the Reaves matter was made to the Texas Company, and that it could have settled it for $4,000. It made a counter-proposition of $1,000, but these propositions were never communicated to the appellees, although the Texas Company claimed to be attending to the Reaves matter as agent for the appellees.

It would serve no useful purpose to set out the testimony in full or at length, for the undisputed testimony establishes the fact that the Texas Company had knowledge of the claim of Reaves, and that the suit was pending before the deal was closed. The representative of the Texas Company admits stating that they would attend to the lawsuit, or fight the lawsuit, but the testimony is conflicting as to whether they purchased the land subject to the lawsuit, the appellee contending that it was so understood, and Mr. Redditt denying that the Texas Company purchased it with that understanding. It is well settled by decisions of this court, as a general rule, that parol testimony is not admissible to vary or contradict the terms of a written contract or agreement, and this court has said, with reference to the admissibility of parol testimony contradicting a deed:

" 'Whenever in a deed the consideration, or an admission of its receipt, is stated merely as a fact, that part of the deed is received as a receipt would be, and the statement is subject to be varied, modified and explained; but, if the stated consideration is in the nature of a contract, that is, if by it a right is vested, created or extinguished, the terms of the contract thereby evidenced may not be varied by parol proof, but the writing is its sole exponent.' "

"We find the rule and its exception very concisely and properly stated in the case of *Hendrick* v. *Crowley, supra,* as follows: 'There is no doubt but that parol evidence is admissible for the purpose of contradicting or showing that the true consideration is other and different from that expressed in the written instrument. But this is not the rule, but an exception to the rule, that the legal effect

of a written instrument cannot be varied or defeated in whole or in part by parol evidence. The exception can never be allowed to override the rule, for that would be to dispense with the rule entirely and preserve the exception. The exception always loses its governing force when it comes in conflict with the rule which it qualifies, and must yield to its higher claim. Hence the consideration cannot be contradicted or shown to be different from that expressed when thereby the legal operation of the instrument to pass the entire interest according to the purpose therein designated would be defeated.' '' *Wallace* v. *Meeks,* 99 Ark. 350, 138 S. W. 638.

The above is a statement of the rule that is found in many decisions of this court, so that it would appear that parol evidence is not admissible to show that a warranty deed warranting against all claims was not intended to warrant against a specific claim; but the court in the case last mentioned also stated:

"No effort was made to prove a mutual mistake in conveying the timber tracts separately as would justify the court in decreeing reformation. Nor is there any proof of fraud in procuring separate deeds, instead of a single deed expressing the entire consideration. The proof merely shows that this was done for convenience, and not through any mistake. The proof does not bring the case within the principle announced by this court in *Lawrence County Bank* v. *Arndt,* 69 Ark. 410, 65 S. W. 1052, where relief was given in equity against a mistake of law on account of reliance by the parties on one side on the representation and superior knowledge of the other party to the contract."

In addition to the contention of appellees that the warranty deed was given by mistake, they also contend that appellant is estopped by its declaration and conduct. This court has defined estoppel as follows:

"Equitable estoppel (estoppel *in pais*) is the effect of the voluntary conduct of a party whereby he is absolutely precluded, both at law and in equity, from asserting rights which might perhaps have otherwise existed,

either of property, of contract, or of remedy, as against another person, who has, in good faith, relied upon such conduct, and has been led thereby to change his position for the worse, and who, on his part, acquires some corresponding right, either of property, of contract, or of remedy. The conduct must be done with the intention, or at least with the expectation, that it will be acted upon by the other party, or under such circumstances that it is both natural and probable that it will be so acted upon.'' *Thompson* v. *Wilhite,* 131 Ark. 77, 198 S. W. 271.

As we have said, the testimony conclusively was that the appellant knew of the Reaves claim and suit before it closed the deal with appellees. It not only knew about the suit, but, according to the undisputed testimony, agreed to attend to the suit itself, and the appellees told Mr. Redditt that they would not fight the lawsuit. The Texas Company knew that it could settle the Reaves claim for $4,000, but did not communicate this proposition to the appellees. Then again, the appellant purchased the Reaves interest without mentioning it to any of the appellees.

The chancellor may have found that the conduct of the appellant estopped it from claiming any right because of the Reaves claim. It is true, as contended by appellant, that knowledge, or notice, however full, of an incumbrance, or of a paramount title, does not impair the right of recovery upon covenants of warranty. The covenants are taken for the protection and indemnity against known and unknown incumbrances or defects of title. The appellees, however, go further in this case, and not only contend that the appellant knew of the defect or incumbrance, but show such conduct on the part of the appellant as appears inconsistent with their claim for damages for breach of warranty because of the Reaves claim.

The testimony is conflicting, and we cannot say that the finding of the chancellor was against the preponderance of evidence, and the decree is therefore affirmed.