VAN BIBBER *v.* HARDY.

4-8826    219 S. W. 2d 435

Opinion delivered April 11, 1949.

112

*Claude F. Cooper* and *Frank C. Douglas,* for appellant.

*Holland & Taylor* and *Marcus Evrard,* for appellee.

Ed. F. McFaddin, Justice. Appellants prosecute this appeal from a decree (1) awarding appellee Hardy $3,000 for breach of warranty; (2) refusing appellants a judgment against appellee Little; and (3) refusing to allow appellants a foreclosure.

In July, 1945, appellants, T. H. Van Bibber and Velma Louise Van Bibber, his wife, through the efforts of Tom Little, a real estate broker, agreed in writing

to sell Alvin Hardy certain real property in the City of Blytheville. There was a two-story building on the property. The ground floor was leased to George Stilwell at a rental of $100 per month; and the second floor was used as a hotel by Mrs. Van Bibber. The sales contract stated, *inter alia*:

"All rents to go to the purchaser after August 1, 1945.

"It (is) understood by both parties that the ground floor of this buliding is now leased till September 1st, 1946. And (at) which time the purchaser can get possession. The seller agrees to vacate her personal and household goods in thirty days from date."

The total contract price was $20,000, of which amount $7,000 was evidenced by a lien note executed by Hardy to the Van Bibbers, due in installments of $100 each month, and with the option given Hardy to pay the entire. balance at any time. On July 19, 1945, in keeping with the sales contract, the Van Bibbers executed to Hardy a general warranty deed, but in which the covenant of warranty made no mention of Stilwell's possession or contractual rights concerning the ground floor of the building.

After delivery of the deed, Stilwell regularly paid his rent to Hardy for several months, and then demanded an extension of his lease of the store building for three additional years, exhibiting to Hardy the original 1943 lease contract between Stilwell and the Van Bibbers, which read in part: "This lease is for a period of three years from September 1, 1943, and the rental price is $1,200.00 per year, payable in monthly installments of $100.00, payable in advance, and second party is given the privilege of renewal of said lease for from one to three years,[1] at the same rental and upon the same general terms."

Hardy paid Stilwell $3,000 in order to obtain possession of the ground floor store building on September

[1] The parties to this litigation have treated this language as definitely giving Stilwell the right to an extension for three years, so we forego any discussion as to whether such was the enforcible meaning of the language.

1, 1946; and then Hardy filed this action against the Van Bibbers for breach of warranty, claiming that it had been represented to him that he would get possession of the ground floor on September 1, 1946, and that the Van Bibbers had contracted with Stilwell that he might have an extension, and that the $3,000 was the amount of the damages for the possession of the store building from September 1, 1946, through the period of the contractual extension held by Stilwell.

In defending the action, the Van Bibbers claimed that Hardy had known, all the time, that Stilwell had the right to a three-year extension, and that Hardy made monthly payments to the Van Bibbers after knowing of the Stilwell contract, and after having paid Stilwell the $3,000, thereby creating an estoppel against Hardy. The Van Bibbers also alleged that Hardy was in default in his monthly payments on the note, and prayed a fore-closure of their lien. The Van Bibbers made Tom Little a cross-defendant, alleging that they had informed him, as their real estate agent, all about the Stilwell contract, and that Little had failed to put the correct provisions in the Hardy sales contract and the general warranty deed. Little's defense was a general denial. The respective parties testified in accordance with their pleadings; and the Chancery Court found and decreed: 1. That Hardy was entitled to judgment against the Van Bibbers for $3,000 for breach of warranty; 2. that the Van Bibbers were entitled to no relief against Little; and 3. that the Van Bibbers were not entitled to foreclose their lien on the property for the balance of the $7,000 purchase note.

To reverse that decree, the Van Bibbers bring this appeal. We discuss the issues under the following topic headings.

I. *Breach of Warranty.* The possession by Stilwell of a portion of the premises described in the deed from the appellants to Hardy was a breach of the covenant of warranty. *Crawford* v. *McDonald,* 84 Ark. 415, 106 S. W. 206; *Kahn* v. *Cherry,* 131 Ark. 49, 198 S. W. 266; see, also, *O'Bar* v. *Hight,* 169 Ark. 1008, 277 S. W. 533 and *Arkansas Trust Co.* v. *Bates,* 187 Ark. 331, 59

S. W. 2d 1025. But under the general rules of estoppel, Hardy could not be heard to claim any damages arising from such breach until after September 1, 1946, because of the provisions in the sales contract, to which Hardy had agreed, and which stated: ''The ground floor of this building is leased till September 1st, 1946.''

However, the same paragraph in the sales contract continued in this language: ''. . . (at) which time the purchaser can get possession.''

The written provision in the sales contract, when considered with the general warranty deed, makes clear that, if the appellants granted Stilwell any lease rights effective after September 1, 1946, then such grant was not only a breach of the covenant of warranty in the deed, but was also actionable by Hardy, unless he be prevented from asserting his cause of action because of estoppel or waiver.

By way of defense, appellants claim that Stilwell's possession at the time of the delivery of the deed was notice to Hardy of the full extent of Stilwell's rights to the premises, even including the right of renewal of the lease; and appellants cite *Thalheimer* v. *Lockert,* 76 Ark. 25, 88 S. W. 591 and *Prince* v. *Alford,* 173 Ark. 633, 293 S. W. 36 to support their contention. To these cases may well be added *First National Bank* v. *Gray,* 168 Ark. 12, 268 S. W. 616, wherein we said: ''. . . the possession of a tenant or lessee is not only notice of all of his rights and interests connected with or growing out of the tenancy itself or the lease, but is also notice of all interests acquired by collateral or subsequent agreements.''

From these cited cases appellants argue that, since Hardy had constructive notice of all of Stilwell's rights, therefore Hardy is now barred from claiming a breach of warranty. But in this argument appellants are confusing Stilwell's rights under his possession with Hardy's rights under the covenant of warranty. Stilwell could claim that his possession was notice to Hardy of the lease extension rights; but that claim by Stilwell does not protect the appellants, because it is definitely stated in their contract (as previously quoted) with Hardy, that

on September 1, 1946, full possession of all of the premises would be delivered to him. In effect, the appellants—by their representation—lulled Hardy into a feeling of security that could well have caused him to forego any inquiry of Stilwell as to the duration of possession or right of extension. Such is the effect of Hardy's testimony.

Our holding in the recent case of *Thackston* v. *Farm Bureau Lumber Corp.*, 212 Ark. 47, 204 S. W. 2d 897 is apposite to the point now under discussion. In the reported case Rinehart had executed a timber deed to the Lumber Corporation which, with an extension, allowed until March, 1946, for the timber to be cut and removed. In September, 1945, Rinehart sold the land to Thackston, representing that all rights of the Lumber Corporation expired in December, 1945. We held that the Lumber Corporation's right to remove the timber continued until March, 1946, even against the rights of Thackston. But we also held that Rinehart was liable to Thackston on the warranty in the deed for all damages accruing after December, 1945, *because Thackston was not informed that the Lumber Corporation had any rights to cut and remove the timber after December, 1945.* Likewise, in the case at bar: Stilwell's right to an extension of his lease is superior to Hardy's claim; but Hardy can recover from appellants on the warranty for all damages accruing after September 1, 1946.

Appellants further contended—in their efforts to defeat Hardy's action on his warranty—that Hardy actually knew, before he received the deed, of Stilwell's right to extend the lease. We need not discuss the questions (a) whether one who contracts to purchase property with knowledge of a title defect thereby waives the right to a perfect title,[1] and (b) whether knowledge by a grantee of an outstanding easement or claim is an estoppel against an action for warranty,[2] because the evidence in the case at bar preponderates to the effect that Hardy did not actually know—until long subsequent

[1] See *Walker* v. *Towns*, 23 Ark. 147, and subsequent cases.

[2] See *Geren* v. *Caldarera*, 99 Ark. 260, 138 S. W. 335 and *Kahn* v. *Cherry*, 131 Ark. 49, 198 S. W. 266.

to the receipt of the deed by him—that Stilwell had any rights to possession after September 1, 1946.

Furthermore, Hardy's acceptance of the monthly rental money from Stilwell up to September 1, 1946, could not work an estoppel against Hardy, because the appellants in the contract of sale had assigned all such rent money to Hardy. Neither did Hardy's acts, in making his monthly payments to appellants after September 1, 1946, estop Hardy from maintaining an action of breach of warranty. The making of such payments by Hardy did not mislead the appellants in any way. They were benefited, rather than prejudiced, in receiving such payments. See *Schlumpf* v. *Shofner,* 210 Ark. 452, 196 S. W. 2d 747, wherein we said:

"The party invoking estoppel must ordinarily show that on account of the action or conduct of the party against whom it is asked he has been put in a more disadvantageous position than he would otherwise have occupied. Nothing in the testimony indicates that anything done by appellee caused appellants or their predecessor in title to assume a different position in the matter than either of them would otherwise have occupied."

So we hold that Hardy had an action for breach of the covenant of warranty, and that he cannot be defeated by either estoppel or waiver.

II. *Action as Premature.* Appellants urge that Hardy's action for alleged breach of warranty was prematurely filed, their contention being that a covenant of general warranty is broken only by eviction, and that Hardy was never evicted and his title did not completely fail. To support this contention, appellants cite, *inter alia,* these cases: *Gibbons* v. *Moore,* 98 Ark. 501, 136 S. W. 937; *Carpenter* v. *Carpenter,* 88 Ark. 169, 113 S. W. 1032; *Quinn* v. *Lee Wilson & Co.,* 137 Ark. 69, 207 S. W. 211.

It is true that a covenant of general warranty is broken by eviction (actual or constructive) by the outstanding superior title, just as these cited cases hold; but it is also true that a convenantee may settle an

adverse and superior title claim, *prior to actual eviction,* and then maintain action against the covenantor for breach of warranty, without having been actually evicted. In such a case, the covenantor may put in issue the question of whether the adverse title was superior. In the case at bar the right of Stilwell to an extension of his lease was superior to the right of Hardy to possession after September 1, 1946. This was discussed in topic I, *supra.* Stilwell's continued possession after September 1, 1946, constituted continued eviction of Hardy.

The facts and holdings in *Scoggin* v. *Hudgins,* 78 Ark. 531, 94 S. W. 684 support the above statements. Hudgins, in order to protect his possession, satisfied a judgment held against the deeded property by a superior adverse title; and then Hudgins—without being evicted —brought action to recover on his warranty. Mr. Justice BATTLE, speaking for this Court, said:

"Hudgins' cause of action accrued on the tenth day of December, 1900, when he paid the judgment recovered by Bowman, as receiver. He was not bound to wait until he was actually disseized. If he had done so, his right of redemption would have expired, and he would have lost the land, with the right to recover on the covenant of his grantor only a small part of its value. Why submit to such loss? Why wait for the inevitable? Equity does not require such sacrifice. *Collier* v. *Cowger,* 52 Ark. 322, 12 S. W. 702, 6 L. R. A. 107; *Dillahunty* v. *Railway Co.,* 59 Ark. 629, 634; 8 Am. & Eng. Enc. Law (2 Ed.), p. 203, and cases cited."

So we hold that Hardy's action for breach of the covenant of warranty was not prematurely filed.

III. *Damages.* No question was raised by the Van Bibbers as to the extension being otherwise than definite and for three years. Hardy paid Stilwell $3,000 in order to cancel Stilwell's right to further possession under the right of lease extension, and to obtain possession of the ground floor of the building on September 1, 1946. It was shown by a witness, unrelated to the parties, that the value of Stilwell's lease for the ad-

ditional 36 months after September 1, 1946, would have been $7,200, or $3,600 more than the contract rent; so the $3,000 paid by Hardy to Stilwell was not excessive. In *Collier* v. *Cowger,* 52 Ark. 322, 12 S. W. 702, 6 L. R. A. 107, we said: ''Where the covenantee buys in the outstanding encumbrance to protect his estate, he is entitled to recover the sum expended in so doing, provided such sum does not exceed the amount paid to the warrantor for the property, with the legal interest on such sum from the date of extinguishment of such encumbrance. *Boyd* v. *Whitfield,* 19 Ark. 447; Rawle, Cov. Tit., sections 143-6.'' Other cases which state this right, and announce the measure of recovery, are: *Brawley* v. *Copelin,* 106 Ark. 256, 153 S. W. 101; *Scoggin* v. *Hudgins,* 78 Ark. 531, 94 S. W. 684, 115 Am. St. Rep. 60; *Dillahunty* v. *Railway,* 59 Ark. 629, 27 S. W. 1002, 28 S. W. 657; *Alexander* v. *Bridgford,* 59 Ark. 195, 27 S. W. 69; *Barnett* v. *Hughey,* 54 Ark. 195, 15 S. W. 464; *Mayo* v. *Maxwell,* 140 Ark. 84, 215 S. W. 678; and *Fox* v. *Pinson,* 182 Ark. 939, 34 S. W. 2d 549, 74 A. L. R. 583.

IV. *Appellants' Complaint Against Tom Little.* The gist of the appellants' complaint and evidence against Little was: that Little was a real estate broker; that as their agent he assured appellants that he would take care of all details and protect them in the sale to Hardy; that appellants explained to Little all about the rights of Stilwell to an extension of his lease; that Little negligently failed to place in the Hardy contract or deed anything about Stilwell's rights to extension of the lease; and that appellants should have judgment against Little for whatever amount the Court might award Hardy in his breach of warranty action.

Little testified that at no time prior to the delivery of the deed did he ever receive any information from the appellants, or anyone else, intimating that there was, or might be, any provision in the Stilwell lease by which the lease could be extended beyond September 1, 1946. In other words, Little denied categorically all that part of the appellants' testimony wherein they said they had explained to Little about Stilwell's rights to an extension of the lease. Little was supported

in his testimony by the witness, Eddie B. David, who had been an employee of Little in 1945, but, at the time of testifying in this case, was no longer connected with Little, and was in fact a competitor to him. David testified that he personally handled all of the transactions with the appellants, and that the appellants never at any time informed him or Little that Stilwell had any right to extend the lease beyond September 1, 1946. David was positive on this point, and we are convinced that his testimony supplies that preponderance of the evidence required to support the Chancery finding. In short, the appellants did not inform Little or David about the lease extension rights of Stilwell, so Little was guilty of no actionable negligence; and we affirm the decree of the Chancery Court in denying appellants a judgment against Little.

V. *Appellants' Right of Foreclosure.* At the inception of the litigation the appellants insisted that Hardy had practiced trickery on them in order to obtain the proper service of process; but they abandoned that claim when they filed their cross-complaint seeking to foreclose their mortgage (deed of trust) for the balance due thereon. The Chancery Court denied the appellants such right of foreclosure; and to that extent we hold that the decree of the Chancery Court was in error.

As a part of the purchase price for the property, Hardy executed a note to appellants for $7,000 payable at the rate of $100 per month. The note gave Hardy the right to pay off the entire balance at any time in advance of the due date, and also provided that failure to make any monthly payments promptly when due would mature the entire note at the option of the holder. In December, 1946, Hardy wrote appellants that, under the right given him, he declared the entire note to be due, and asked that it be sent to the bank at Blytheville for payment. When the note reached Blytheville Hardy filed his action for breach of warranty, and attached the note, since the appellants were nonresidents. Thus, Hardy elected to declare the entire amount due, and by this suit obtained a credit on the note for the amount adjudged to be his damages for breach of warranty. But certainly Hardy

owes the balance on the note; and the appellants are entitled to a foreclosure of their deed of trust for the balance due on Hardy's note, after crediting the judgment for breach of warranty.

It follows that the decree of the Chancery Court is affirmed on all points except as to appellants' right of foreclosure. On that single issue the decree is reversed, and the cause is remanded with directions to allow appellants a foreclosure unless the balance due them be promptly paid. The costs of this appeal are adjudged to be paid one-half by appellants and one-half by appellee Hardy.