SMILEY *v.* THOMAS.

4-9703                                    246 S. W. 2d 419

Opinion delivered February 25, 1952.

*L. Jean Cook* and *Frank S. Quinn,* for appellant.

*T. B. Vance, Willis B. Smith* and *A. G. Sanderson, Jr.,* for appellee.

HOLT, J.  Prior to April 1, 1925, O. L. Kendrick was the owner of a forty acre tract of land in Miller County and on that date executed a deed to J. W. Koonce, denominated "Warranty Deed, Oil, Gas and Mineral Royalty," containing these recitals: "That we, O. L. Kendrick, a single man, for and in consideration of the sum of $100, One Hundred and No/100 Dollars, to us cash in hand paid by J. W. Koonce, receipt of which is hereby acknowledged, do hereby grant, bargain, sell and convey unto the said J. W. Koonce and to his heirs and assigns forever, the undivided one-half interest in and to all of the oil, gas and other minerals, in, under and upon the following described lands lying within the County of Miller and State of Arkansas, to-wit:

"The west half of northwest quarter ( W ½ of NW ¼) of section 23, township 16 south, range 28 west, containing 80 acres, more or less; subject, however, to any valid oil and gas lease now upon said land and recorded in the office of the Clerk and Recorder of Miller County, Arkansas.  And for said consideration we do hereby grant and convey unto the said J. W. Koonce and unto his heirs and assigns the right to collect and receive under the aforesaid lease such undivided one-half (½) part and interest of all oil royalties and gas rentals due us or that may become due us under the aforementioned lease.  TO HAVE AND TO HOLD, etc."

Following the recording of the Koonce deed, the land on March 18, 1929, was conveyed,—without exceptions,

—to Brice Williams. On July 10, 1929, Williams conveyed the land by warranty deed (without exceptions and without reference to the Koonce deed) to appellees, Mr. and Mrs. Thomas, who have held possession since.

In 1936, Brice Williams died intestate, leaving his mother, Mrs. Kate Williams, and appellant, Mrs. Jodie Smiley, his sole survivors and distributees. Brice Williams' estate was administered and closed in 1938, and in 1940 his mother died intestate, leaving Mrs. Smiley her sole heir.

On December 4, 1950, appellees (Thomases) filed the present suit to quiet their title to the forty acre tract, in effect, alleging that by reason of the above outstanding ½ mineral interest conveyed by Kendrick to Koonce in 1925 and later to O'Brien Bros., Inc., the warranty in the deed of Brice Williams to them had been breached, that there had been a constructive eviction of appellees, that Mrs. Jodie Smiley, appellant, though called upon to defend appellees' title, has refused to do so, "that that portion of the title thereto which has failed and been breached is of the value of $1,250, together with items of expense, court costs and attorney's fee herein incurred;" that O'Brien Bros., Inc. acquired no valid title to the ½ mineral interest which they claim and by way of cross complaint against O'Brien Bros., appellees (Thomases) assert claim to the ½ interest claimed by O'Brien Bros. through certain tax sales. Appellees (Thomases) prayed that title to the O'Brien Bros.' mineral interest be quieted in them but that should the court hold that O'Brien Bros. held a valid title to the ½ interest, then that they (Thomases) have judgment against Mrs. Smiley "for the sum of $1,250, for $.................... expenses incurred in attempting to remove such incumbrances against said land including $250 attorney's fee herein and for cost and other proper relief."

Mrs. Smiley answered with a general denial and pleaded laches, limitations, statute of nonclaims, and that the suit was premature because there had been no eviction.

Appellee, O'Brien Bros., Inc., filed answer asserting title to the said ½ mineral interest by mesne conveyances from Kendrick, (being the common source of title), grantor in the first said mineral deed above, denied the validity of the tax deed under which the Thomases claimed title to the said ½ mineral interest and prayed that title to same be quieted in it.

The trial court found (in effect, quoting from appellant's brief) that the Thomases "are the owners by the entirety of the lands involved in the suit, except one-half (½) of the oil, gas and minerals; that O. L. Kendrick is a common source of title and that he conveyed an undivided one-half (½) interest in the oil, gas and minerals to J. W. Koonce. That the defendant, O'Brien Bros., Inc., is the successor in title to this one-half (½) mineral interest; * * * that Mrs. Jodie Smiley, as heir at law of Brice Williams, received and now holds in title and possession, lands and other property in excess of the amount of plaintiffs' claim and that she is liable to respond to plaintiffs by reason of the breach of warranty in said Williams' deed.

"The court then finds that O'Brien Bros., Inc., is the owner of the Koonce undivided one-half (½) interest, and that all tax proceedings and sales of the interest should be cancelled and annulled and title quieted in O'Brien Bros., Inc., as to said one-half (½) mineral interest, and quiets the title in and to said one-half (½) interest in O'Brien Bros., Inc.

"The court further finds that plaintiffs' title in and to the lands has failed to the extent of the one-half (½) interest owned by O'Brien Bros., Inc.; that by reason of breach of warranty in said Williams' deed to plaintiffs, they have been damaged in the sum of $600, for which sum judgment should be rendered against the defendant, Mrs. Jodie Smiley, as heir at law of Brice Williams, deceased. It is therefore considered, ordered and decreed that title to the Koonce one-half (½) mineral interest be quieted in O'Brien Bros., Inc.; that plaintiffs have and recover of and from Mrs. Jodie Smiley the sum of $600, and all costs herein accrued."

This appeal followed.

As to the interest of O'Brien Bros., Inc., which we first consider, we hold that they had title to a ½ interest in the oil, gas and mineral, and that the Chancellor was correct in so holding. Under the terms of the above deed from Kendrick to Koonce, Kendrick conveyed a ½ mineral interest to Koonce in fee (subject to the royalty lease, which has expired). O'Brien Bros. later obtained all the interest of Koonce. The above deed is in the exact form of a conveyance which was construed by this court in *Segars* v. *Goodwin*, 196 Ark. 221, 117 S. W. 2d 43, and in effect the same. We there held: (Headnote 2) "Deeds.—Under a deed conveying to G. 'an undivided one-half interest in and to all of the oil and gas and other minerals in, under, and upon' the lands conveyed, subject to a lease to P., and 'granting and conveying the right to collect and receive * * * such undivided one-half part and interest of all oil royalties and gas rentals due under the * * * lease,' G. became the absolute owner of an undivided one-half interest in and to the oil, gas and other minerals under the lands conveyed subject to the lease to P.; and if oil or gas should be produced, he will be entitled to a one-half interest in the royalty or a one-sixteenth thereof, and, if the lease should be forfeited, appellee and appellants would be the joint owners of all the oil, gas and other minerals under such lands each owning a one-half interest therein."

There is no dispute that appellees, Thomases, owned the land and a ½ interest in the oil, gas and minerals at all times. It appears that in 1934, taxes were extended on the tax books against an undivided ½ interest in and to the *oil and gas* in and under the land here involved in the name of G. C. Thomas. In 1934, the preceding year, and each subsequent year, the county officials listed all *mineral* interests, in extending the tax on the tax books of said county, alphabetically, according to the respective names of the supposed owners of said minerals, and not according to land descriptions. For 1934, taxes on the ½ mineral interest in and under the lands here involved which were assessed not by land description, but under the name of G. C. Thomas, were returned delin-

quent and purportedly sold to J. O. Seitz, who thereafter conveyed to Mr. and Mrs. Thomas.

In the circumstances, the tax sale to Seitz was void for lack of power to sell and Mr. and Mrs. Thomas acquired nothing by virtue of the deed (in 1942) from Seitz to them and the court was correct in so holding and fully supported by our recent decisions. *Sorkin* v. *Myers,* 216 Ark. 908, 227 S. W. 2d 958; *Davis* v. *Stonecipher,* 218 Ark. 962, 239 S. W. 2d 756, and *Steinbarger* v. *Keever,* 219 Ark. 411, 242 S. W. 2d 713. These cases are controlling on this issue.

All of appellant's defenses of the Statute of Limitations, Laches and Statute of Nonclaims against the Thomases are without merit. There had been no constructive eviction, in effect, until the present suit was filed in December, 1950, wherein Mrs. Smiley was a party and the court held, as indicated, that O'Brien Bros. owned the ½ mineral interest in the land involved here and that the covenant of warranty in the above deed had been breached. This court held in *Gibbons* v. *Moore,* 98 Ark. 501, 136 S. W. 937, (Headnote 3) : "A covenant for quiet enjoyment of land is a covenant which runs with the land, for breaches whereof the grantee, his heirs or assigns, may sue as if it were expressly inserted in the conveyance." (Headnote 4) "Same—When Broken.— A covenant for quiet enjoyment * * * was broken where a title paramount to that of the grantee's was held valid in a suit against them to which their grantor was a party," and in the opinion said: "Incumbrances have been lucidly and briefly defined as any rights to interests in land which may subsist in third persons, to the diminution of the value of the land, and not inconsistent with the passing of the fee of same by deed."

In *Quinn* v. *Lee Wilson & Co.,* 137 Ark. 69, 207 S. W. 211, this court said: "Covenants of warranty of title are universally held to run with the land, and ordinarily a right of action does not arise in favor of the grantee or subsequent holder of the title until there has been an eviction under paramount title; but an exception to this rule is that where the title is in the gov-

ernment the covenant of warranty is deemed to be broken as soon as it is made, and the right of action is complete at that time, and the statute of limitations begins to run."

Here, the title was not in either the government or State, and in *Texas Co.* v. *Snow,* 172 Ark. 1128, 291 S. W. 826, we said: "Knowledge, or notice, however full, of an incumbrance, or of a paramount title, does not impair the right of recovery upon covenants of warranty. The covenants are taken for the protection and indemnity against known and unknown incumbrances or defects of title."

The action was not prematurely brought.

We said in *Van Bibber* v. *Hardy,* 215 Ark. 111, 219 S. W. 2d 435, wherein we quoted with approval from *Scoggins* v. *Hudgins,* 78 Ark. 531, 94 S. W. 684: "Appellants urge that Hardy's action for alleged breach of warranty was prematurely filed, their contention being that a covenant of general warranty is broken only by eviction, and that Hardy was never evicted and his title did not completely fail. . . . A covenantee may settle an adverse and superior title claim, prior to actual eviction, and then maintain action against the covenantor for breach of warranty, without having been actually evicted. . . . 'He was not bound to wait until he was actually disseized. If he had done so, his right of redemption would have expired, and he would have lost the land, with the right to recover on the covenant of his grantor only a small part of its value. Why submit to such loss? Why wait for the inevitable? Equity does not require such sacrifice.' "

As to appellees' (Thomases') claim on cross appeal that the court erred in not allowing a larger amount for damages for breach of warranty and in addition an attorney's fee of $250, it suffices to say on the question of damages, that after a review of all of the testimony, we are unable to say that the Chancellor's award of $600 is against the preponderance thereof. As to the attorney's fee, it appears that while appellees (Thomases) asked in their complaint that a fee of $250 be taxed as

costs, they offered no evidence as to reasonable attorney's fee. They did not press their request for an attorney's fee during, or at the close of the trial and the court in the decree made no mention of it or any allowance for an attorney's fee. The decree recited: "That plaintiffs (Thomases) have and recover of and from Mrs. Jodie Smiley the sum of $600, and all costs therein accrued."

The rule is that "under a covenant of warranty to defend titles, the cost and necessary expenses incurred by a covenantee in a *bona fide* defense or assertion of his title are recoverable in an action by him against the covenantor for the breach of his warranty. Necessary expense would include a reasonable attorney's fee," (*Breach* v. *Nordman*, 90 Ark. 59, 117 S. W. 785), and we hold that in the absence of evidence to support a claim for a reasonable attorney's fee and a demand therefor, the court was correct in not specifically allowing any fee. See, also, *Temple et al.* v. *Lawson*, 19 Ark. 148.

On the whole case, finding no error, the decree is affirmed.