115 476
126 168

# Frix *v.* Miller, *et al.*

*Bill in Equity to enjoin Suit at Law.*

1. *Vendor and purchaser; purchaser under no obligation to perfect title.*—Where the purchaser of lands, subsequently ascertains that they are public lands open to entry, he is under no obligation or duty, legal or equitable, to the vendor to enter the lands in order to perfect the title which the vendor had undertaken to grant him.

2. *Same; covenants of warranty; action for breach thereof; defenses.* It is a defense to an action for the breach of the covenants of warranty contained in a deed to lands, that through fraud and collusion between plaintiff and a third person the lands in question, when ascertained subsequent to plaintiff's purchase to be public lands, were entered as a homestead by such third person for the use of plaintiff, and that the plaintiff's eviction therefrom was only pretended.

3. *Same; same.*—Where the purchaser of lands and his son, subsequent to the purchase, ascertain that the lands are public lands, and the son enters the land as a homestead for his own use solely, the fact that neither the father nor the son communicated to the vendor their information that such lands were public lands, does not bar the father's right of action for the breach of the covenants of warranty contained in his deed, upon his being evicted by the son or surrendering possession to him under his paramount title so acquired.

4. *Same; equity of bill for injunction.*—Where, subsequent to the purchase of lands, the purchaser ascertains that they are public lands, open for entry, and a third person, with knowledge of such facts, enters such lands as a homestead for his own use and evicts the purchaser, who thereupon brings an action against his vendor for the breach of the covenants of warranty contained in his deed, a bill filed by the vendor to enjoin such suit by the purchaser, alleging these facts, and which further avers that it was the duty of the purchaser upon ascertaining the fact of the lands being public to have entered them and perfected the title which was undertaken to be granted, and that he ought to have communicated to the vendor such information, and further avers that the entry by the third person was by fraud and collusion with the purchaser for the latter's use, and then contains an offer to pay such sum necessary to the reimbursement of the amount paid in making the entry, is without equity. If there was fraud or collusion, as averred in the bill, it constituted a grievance of purely legal cognizance, pleadable in bar to the action at law.

APPEAL from the City Court of Gadsden, in Equity. Heard before the Hon. JOHN H. DISQUE.

The facts of the case are sufficiently stated in the opinion.

AMOS E. GOODHUE and DORTCH & MARTIN, for appellants.—1. In the action at law, it would seem that the iron clad rule measuring Miller's recovery for breach of covenant of warranty is the purchase money paid with interest. If Charles Miller had, in good faith, endeavored to return possession to his vendor, there can be no doubt but that his recovery, both at law and in equity, would have been measured by the purchase money paid. But he owed to his vendor the equitable duty of restoring to him the possession unless ousted by some superior title. He owed to the vendor the duty of doing all that he could to restore the *status in quo*.—*Sivoly v. Scott*, 56 Ala. 555; *Lett v. Brown*, 56 Ala. 550; *Houston v. Hilton*, 67 Ala. 374.

2. When Charles Miller ascertained that the title conveyed to him by Frix was in the United States, he had an election to take one of two courses. He could have abandoned the land, surrendered the possession to Frix from whom he obtained it, and then the measure of his damages would have been the purchase money and interest; or again, he could have relieved the incumbrance by entering the land himself, remaining in possession and thereby acquiring the title. In that event the measure of his damages would have been in equity the cost and expense of entering the land.—*Gallagher v. Witherington*, 29 Ala. 420; *Purcell v. Lay*, 84 Ala. 287.

PUGH & HOOD and DENSON, BURNETT and CULLI, *contra*. The breach of the covenant of general warranty occurred when Charles Miller was evicted or when he surrendered possession to an irresistible paramount title.—*Griffin v. Reynolds*, 17 Ala. 198; *Copeland v. McAdory*, 100 Ala. 553; *Hamilton v. Cutts*, 3 Amer. Dec. 222; *King v. Kerr*, 22 Amer. Dec. 777; *Patton v. Kennedy*, 10 Amer. Dec. 744.

2. A covenant of warranty is an agreement by the warrantor that on the failure of the title which the deed purports to convey, either for the whole estate or a part only, he will make compensation in money for the loss sustained.—*King v. Kerr*, 22 Amer. Dec. 777.

3. The measure of damages for the breach of a covenant of warranty, where the whole of the premises are lost by failure of title, is the consideration received by Frix with interest.—*King v. Kerr*, 22 Amer. Dec. 777, and authorities cited *supra*.

4. The prayer of said bill, as amended, can mean but one thing, and that is that Martin Miller be decreed to hold the title of said lands in trust for Charles Miller, which certainly can not be done until he is entitled to receive a patent for said lands.—Revised Statutes of the United States, § 2290; Sup. to Rev. Stat. U. S. 1874-1891, p. 942, §§ 2288, 2290; 19 Amer. & Eng. Encyc. of Law, 333; *McCue v. Smith*, 86 Amer. Dec. 100; *Frisbie v. Whitney*, 9 Wall. 187; *Meyers v. Croft*, 13 Wall. 291.

HEAD, J.—Judson J. Frix is the complainant, and Charles Miller and Martin Miller, the respondents in this bill. The substance of the complainant's complaint is that, on January 15, 1892, he sold and conveyed to said Charles Miller, with covenant of warranty, 149 acres of land, which he, and those under whom he claimed, had been in possession of for more than twenty years. That the chain of his title ran regularly back, through successive conveyances, to 1821, and he and his predecessors claimed and held the property as their own, and supposed they had good titles thereto. In fact, the title to a particularly described eighty acres of the land had never passed out of the United States, and said eighty acres was still subject to entry. The said Charles Miller, on his purchase, went into possession, and remained in the undisturbed possession of the land, until a period so unintelligibly stated in the bill as not to be capable of being understood. Said Martin was a son of Charles Miller, who, the bill avers, was, since 1892, a member of his father's family, residing with his father upon said land. He, Martin Miller, knew all the time, that his father had purchased the land from complainant, himself having supplied a portion of the purchase money. Sometime in the year 1894, Charles Miller and ——— Miller (we suppose, by the latter, is meant Martin Miller) ascertained that said eighty acres was public land open to entry. It is averred that said eighty acres lie adjacent to lands of orator, and that orator was entitled, under the laws of the United States, to acquire the title to said

lands by the payment of $1.25 per acre, and that Charles Miller had the right, and could have acquired the title to said land, as a homestead, under the laws of the United States; that said "Charles Miller and ——— Miller fraudulently kept from orator the knowledge which they had acquired that said land was public land and subject to entry; that said Charles Miller did not surrender the possession which he had acquired from orator, and made no effort to put orator back in possession of said land, but procured or permitted his son, Martin Miller, to take advantage of the possession which he had as a member of his father's family, to enter such land as a homestead under the laws of the United States; that said Martin Miller, on the — day of ———, by and with the knowledge and consent of his father, entered said land and received a receiver's receipt for the entry fees." Until this occurred orator had no actual notice that the land was public land, but he believed he had conveyed to Charles Miller a perfect title.

On August 29, 1895, said Charles Miller commenced an action at law against the complainant for the breach of the covenant of warranty, alleging eviction by said Martin Miller under his paramount title acquired from the United States, as aforesaid; which suit is still pending. The bill avers that orator "has frequently offered, and now offers to perfect the title to said land by the payment of all costs and expenses that may be necessary to procure the title from the United States, either in orator as owner of an adjoining farm, or in said Miller as a homestead; or otherwise to procure the title from the United States. The said Charles Miller has constantly refused to accept such propositions, and persists in pressing his said suit."

The complainant submits himself to the jurisdiction of the court, and offers to do all things necessary, under the direction of the court, to procure and perfect the title to said land in said Charles Miller, and to pay all costs and expenses necessary thereto, and to do whatever, in the premises, may be required by equity and good conscience.

The special prayer is for a temporary injunction of the action at law; that "said Martin Miller hold the title (he may acquire when completed and patent issued therefor) for said entry of said land, as a

trustee for said Charles Miller, in so far as to limit said Charles Miller's recovery upon his claim for breach of covenant of warranty, to the costs and expenses of acquiring the title from the United States;'' that the amount of such costs and expenses be ascertained, and, upon payment of the same by orator, that the action at law be perpetually enjoined. There is a prayer for general relief.

The chancellor sustained a motion to dissolve the injunction, and also to dismiss the bill for want of equity. The appeal is from that action. There were demurrers to the bill, but they were not passed upon.

The gist of the complaint (though in some respects vaguely and imperfectly expressed) appears to be that it was the duty of Charles Miller, to the complainant, when he learned that the eighty acres were public land, to have entered it as a homestead, and thus have perfected the title which complainant had undertaken to grant him; or to have communicated to the complainant the information that he had received that the land was public land, affording complainant an opportunity, as adjacent owner, to purchase the eighty acres from the government, at $1.25 per acre, and thereby perfecting Miller's title; that Miller failed to perform this duty, but, with his son, fraudulently withheld said information, and aided and abetted his son, for some use or benefit to himself, to secretly enter the land. Wherefore, in equity, the said Charles Miller should be treated as having perfected his title in one or the other of these methods, and his damage for the breach of the covenant of warranty limited to the sum necessary to his reimbursement, which sum he offers to pay, and obtain perpetual injunction of the action for the breach. We say this seems to be the general scope and object of the bill, though its allegations and prayer are somewhat vague and imperfect, rendering the bill demurrable. If the bill, thus considered, contains equity, the motion to dismiss for the want of equity, should not have been sustained, notwithstanding the demurrable defects. The latter might be cured by amendment.

We remark, in the first place, that it is too obvious for discussion, that Charles Miller was under no sort of duty or obligation, legal or equitable, to Frix, to assume and carry out the duties, obligations and burdens of

entering the land, in question, as a homestead; so that phase of the bill gives it no equity.

The bill in its other aspect, when its whole frame is considered, relies for its equity, as we have indicated, upon the theory that, by fraud and collusion between them, Martin Miller entered the land really for the use of Charles Miller and that the alleged eviction was collusive and fraudulent; hence Charles Miller is entitled only to reimbursement of the cost of entering the land. If the bill does not mean this it means nothing favorable to complainant. Upon any other theory it is without a shadow of equity. If such were the character of the entry and eviction, it is obvious that Charles Miller has no right of action at law for breach of the covenant, as upon an eviction by Martin Miller, under title paramount, whereby his damages would be measured upon the basis of the total loss of the eighty acres, for the reason that, in such case, the eviction was only pretended and not real. A collusive eviction is of no force or effect in an action for a breach of warranty. If the collusion appears, the action cannot be sustained.—*Davis v. Smith*, 5 Ga. 247; s. c. 48 Am. Dec. 279.

Whether, in a proper action, the covenantee guilty of such collusion, may recover for the cost of entering the land under the general principle that a vendee, buying in a paramount title, may sue upon the covenant of warranty and recover the amount paid by him for such title, not exceeding the original purchase money and interest, we do not now decide. The action here sought to be enjoined is not of that character. It is for the loss of the land by eviction under a paramount title.

Hence, it is manifest that the grievance complained of, if meritorious at all, is one of purely legal cognizance pleadable in bar of the action at law.

If, without fraud or collusion with Charles Miller, Martin Miller entered the land for his own use—no use, trust or benefit to accrue therefrom to Charles Miller—the fact that he and Charles Miller failed to communicate to complainant their information that the land was public land, would not affect Charles Miller's right of action for breach of the warranty, if he was evicted by Martin Miller, or surrendered possession to him under his paramount title so acquired.—*Copeland v. McAdory*, 100 Ala. 553.

There is no equity in the bill, and the decree of the chancellor dissolving the injunction and dismissing the bill for want of equity is affirmed.

Affirmed.