HAMILTON v. FARMER.

Opinion delivered March 14, 1927.

1. LIFE ESTATES—LIMITATION.—The statute of limitations does not begin to run against a remainderman until the life tenant's death.

2. COVENANTS—EVICTION.—An outstanding paramount title is not an eviction and does not of itself constitute a breach of the warranty in a deed.

3. MORTGAGES—DECREE FORECLOSING LIEN.—A grantee purchasing the interest of a remainderman and executing a note and mortgage therefor was bound by the contract, and a decree foreclosing the lien in favor of the remainderman was correct.

4. COVENANTS—WARRANTY—EVICTION.—Generally, an eviction, to authorize an action for breach of a covenant of warranty, must be without the consent and participation of the grantee, and, if brought about through his fraud or collusion, or if he invites or does anything to bring about the assertion of a paramount title, the eviction is unavailable to him in such action.

5. COVENANTS—BREACH OF WARRANTY.—A covenant of warranty in a deed is not broken until actual or constructive possession by paramount title is taken, as a mere outstanding title may never be asserted.

6. COVENANTS—BREACH OF WARRANTY.—Where a remainderman did not undertake to assert title until invited to do so by the grantee, and did not claim any right to possession in the latter's suit to

confirm title, and the court simply adjudged that he was owner of a twelfth interest subject to a life estate, there was no breach of the implied warranty of quiet enjoyment.

Appeal from Craighead Chancery Court, Western District; *J. M. Futrell,* Chancellor; affirmed.

*T. A. Turner* and *Horace Sloan,* for appellant.

*Basil Baker* and *N. F. Lamb,* for appellee.

MEHAFFY, J.  The appellant, A. J. Hamilton, purchased the land in controversy from Thomas G. Foster and wife on October 21, 1918.  Foster had acquired title to the lands from Henry A. Armour and wife, and A. J. Hamilton alleges in his suit that the warranty in said deed from Armour and wife was breached by a paramount outstanding title, held by Doss Pierce, one of the heirs at law of G. A. Crisler, and that plaintiff had been evicted by being compelled to pay Doss Pierce the sum of $233 and costs for his interest therein.

It was alleged in Hamilton's complaint that the estate of Foster, who had died, was insolvent, and, for that reason, Henry Armour was made a party defendant. On October 17, 1903, W. W. Crisler and Nancy A. Wallace conveyed the lands to said G. W. Armour, and that Henry Armour acquired title to said lands as an heir of G. W. Armour, deceased.  The complaint alleges warranties in each of the conveyances and alleges a breach of said warranties.  The following stipulation was entered into:

STIPULATION AFFECTING BOTH CASES.

"It is hereby stipulated by and between the parties to the above entitled causes and their respective attorneys of record as follows:

"First:  Said two causes may be consolidated.

"Second:  The depositions and evidence heretofore taken and entered in both of said causes may be introduced in evidence upon the trial of said consolidated causes in so far as said evidence is competent, relevant and material, except a stipulation to which is attached papers purporting to be the letters written by one Hamilton, which stipulation and letters shall not be introduced in evidence, but, in lieu thereof, it is agreed that J. H.

Hamilton mentioned in the proceedings and evidence is now living.

"Third: All deeds of record thereof pertaining to the real estate involved herein may be introduced in evidence.

"Fourth: All orders, decrees, proceedings and evidence in a cause where A. J. Hamilton was petitioner and A. J. Hamilton against Doss Pierce _et al._, pending in this court, in which said Hamilton sought to confirm title to the real estate involved herein and to cancel the title of Doss Pierce thereto, may be introduced in evidence by either party.

"It is further stipulated and agreed that the two written instruments pleaded in the answer herein as having been executed by James H. Hamilton were in fact executed and delivered by him for the consideration mentioned therein at the date alleged; that, while no real estate is specifically described in either of said instruments, yet the same have reference to the real estate involved in this suit, and were intended to include and convey any interest in said real estate which said James H. Hamilton may have had, and that said two instruments may be introduced in evidence as conveyance by said James H. Hamilton of any interest he had or claimed to have in the estate of said G. A. Crisler, including the real estate involved in this suit.

"Fifth: That the amount paid by plaintiff, to-wit, $233, was a reasonable consideration, if plaintiff is to recover in said cause, and that attorney's fee of $100 is not excessive, and shall be considered a fair charge and payment in said cause, along with costs, in matter of Hamilton _v._ Pierce, Craighead Chancery Court, No. 2107.

"It is further agreed that G. A. Crisler died seized of the real estate involved in this case, leaving surviving him W. W. Crisler, Nancy R. M. Wallace, Ellen Pierce and Pinky Hamilton, as sole heirs at law of G. A. Crisler.

"That, at the time of G. A. Crisler's death, James H. Hamilton and Pinky Hamilton were married, and, as the result of said marriage, one child was born alive, and

that the death of Pinky Hamilton occurred prior to the death of Ellen Pierce, who, at the time of her death, had two children, one of whom has since died, leaving Doss Pierce her sole remaining heir, and who, as such, inherited a one-twelfth interest in the property herein described."

Testimony was introduced to the effect that W. W. Crisler and Nancy Wallace executed a deed to the land in controversy to G. W. Armour. W. W. Crisler was one of the heirs of G. A. Crisler, his other heirs being Mindy Wallace, Ellen Pierce, and Pinky Hamilton. Pinky Hamilton, before her marriage, was Pinky Crisler.

The testimony shows conveyances down to the conveyance to appellant by Foster, and, as stated by appellant in his brief, there are two principal questions. First, was there a breach of the covenants of warranty? The chancellor found that there was a breach of warranty, because Doss Pierce had asserted his right to one-twelfth interest in the land in court. Under the decisions of our court, of course, he could not have maintained a suit for possession until after the death of the life tenant, because his cause of action would not have accrued during the lifetime of the life tenant. We think that Doss Pierce was not barred by the statute of limitations and that he would have had a cause of action after the death of the life tenant, but he did not undertake to assert it until the appellant himself had begun a suit to confirm his title, and it is perfectly clear from the record in the case that he knew that Doss Pierce owned a one-twelfth interest. But an outstanding paramount title is not an eviction, and does not of itself constitute a breach of the warranty; but appellant, having purchased the interest of Doss Pierce and executed a note and mortgage therefor, was bound by this contract, and the judgment or decree against the appellant foreclosing the lien in favor of Doss Pierce was unquestionably correct. The next and most difficult question, however, is whether plaintiff would have a cause of action against the grantors for a breach of warranty, and the first question to be decided is, did his own conduct disentitle him to recover damages against the grantors?

The record indicates that the appellant himself had lived in the community a long while, and knew the parties, and knew that Doss Pierce was an heir to some portion of the estate; but, as we have already said, the existence of this paramount title itself would not constitute an eviction nor entitle the appellant to bring suit against the grantors. It is generally held that an eviction, in order to be effective as a basis of an action for breach of covenants of warranty, must be without the consent and participation of the grantee. Any eviction brought about through either the fraud or collusion on the part of the grantee will be unavailing to him in an action against the grantor for damages for a breach of warranty. We think that a grantee cannot invite or do anything to bring about the assertion of the paramount title and thereby an eviction, and then recover damages against the grantors. Doss Pierce might never have asserted his title. The eviction must be by title paramount to constitute a breach, for a collusive eviction is of no force or effect in an action for a breach of warranty. *Frix* v. *Miller,* 115 Ala. 476, 22 So. 146, 67 Am. St. Rep. 57.

In a case in the Court of Appeals in Kentucky it appeared that one Thomas Vincent sold to A. J. Hicks a certain tract of land in Hickman County, Kentucky, and executed and delivered a deed to him, with covenants and general warranty therefor. Subsequently a suit was instituted against Hicks to recover about 22 acres of land, and a judgment was entered against Hicks for its possession. Hicks thereupon brought suit against the grantor for a breach of warranty, and the following agreement was signed:

"It is agreed that the judgment in favor of Maxwell and others against A. J. Hicks, in the Hickman Circuit Court, was and is an agreed judgment based on the value of the said 22 acres of land and the rents of same, and the value of said land and rents thereof were reasonably worth the amount said Hicks agreed to pay Maxwell *et al.,* and said agreed judgment was agreed to between said

parties several days before said Hickman court convened, and the same was based on the facts found in the depositions of said case of *Maxwell et al.* v. *Hicks.* It is also agreed that the facts in said depositions were not at any time submitted to said court. It is further agreed that a certified copy of the deed from Maxwell *et al.* to Hicks shall be read here in this action as evidence.''

The court said, after quoting said agreement:

''This agreement shows that the judgment was entered as a result of an agreement between the Maxwells and the Hicks, and fully supports the averment of the answer in regard thereto. The deed referred to in the agreement was in evidence, and shows that, previous to the judgment, Maxwell, for a recited consideration, conveyed the 22 acres to the appellee, Hicks. Was there an eviction as contemplated by law? There can be no action maintained for a breach of warranty in a case like this until the vendee has been regularly evicted by a judgment of a court of competent jurisdiction. * * * The appellant was not bound by any agreement which Hicks and Maxwell made with reference to the land, neither was he bound by the judgment which was entered as a result of the agreement. From the facts admitted in this record, the appellees were not entitled to maintain this action for the alleged breach of warranty.'' *Vinson* v. *Hicks* (Ky.), 64 S. W. 456.

It has been said: ''An eviction brought about by collusion would not sustain the action for breach of covenant, nor could the plaintiff recover any damages which could have been prevented or avoided by reasonable diligence on his part, and he owed a duty to the defendant to so conduct himself as to make the damages as little as possible.'' *Jenkes* v. *Quinn,* 137 N. Y. 223, 33 N. E. 376. The chancellor in his opinion said: ''This leaves for consideration the express warranty, on which little need be said. This warranty, reduced to its final analysis, is a promise to protect possession. This covenant is not breached until there has either been an actual or con-

structive eviction by paramount title. An outstanding paramount title is not sufficient, for it may never be asserted.''

We think the chancellor was correct; that Doss Pierce might never have asserted his title. But appellant insists that the chancellor overlooked the fact that there is an implied warranty of quiet enjoyment. The lower court, however, did not overlook this, we think, and did not hold that this warranty was broken when made, but held that Doss Pierce had no right to possession and could not assert any right to possession until the death of Hamilton, who had a life estate. He not only did not undertake to assert any title until invited to do so by appellant, but he did not in the suit claim, and the chancellor did not find, that he had any right to possession. The chancery court simply adjudged that he was the owner of a one-twelfth interest, subject to the life estate of Hamilton. This judgment gave Pierce no more right than he already had, and we think that, while there may be a constructive eviction which will justify a suit by the grantee for damages, there was no such eviction in this case. The life tenant may have had a right to interfere with the possession, but Pierce did not. As we have already said, one cannot invite or bring about the assertion of a paramount title and thereby bring about an eviction and then bring suit against his grantors for eviction.

Finding no error in the decree of the chancery court, it is affirmed.