578

Circuit Court of Appeals, Fifth Circuit.
June 22, 1934.

Horace C. Wilkinson, of Birmingham, Ala., and A. J. Harris, of Decatur, Ala., for appellant.

White E. Gibson, of Birmingham, Ala., for appellee.

Before BRYAN, FOSTER, and HUTCHESON, Circuit Judges.

HUTCHESON, Circuit Judge.

The action is for breach of covenants of warranty and against incumbrances in a deed Kinney made to plaintiff. The claim is that Pollak's successful assertion that Kinney's
*Rehearing denied July 18, 1934.

apparent title was only for the purposes of security, and that he held it subject to Pollak's right to redeem, had broken them. The defenses are that there has been no real eviction, and therefore no breach of the warranty covenant, and only a nominal breach of that against incumbrances. Specifically, it is claimed that Millsap brought about his own eviction, was himself the cause of any damage that he suffered. It is asserted that though Pollak's right to redeem was finally established by decree, this was brought about by, and would not have come to pass but for, Millsap's collusion with Pollak. These are the facts.

On October 28, 1925, for a consideration of $16,000, $5,000 cash and $11,000 in notes which were later paid, Kinney conveyed the property to Millsap. The deed contained the following covenants: "And I, the said Kinney, do for myself, and for my heirs, executors and administrators, covenant with the said Millsap, his heirs and assigns, that I am lawfully seized in fee simple of the premises; that they are free from all encumbrances; that I have a good right to sell and convey the same as aforesaid; that I will, and my heirs, executors and administrators shall, warrant and defend the same against the lawful claims of all persons." About a year later Pollak filed his suit to redeem. This suit was based upon the claim that the moneys he had gotten to redeem the property from an earlier foreclosure were gotten on mortgage, and that the deed to Kinney evidenced only a security title. The suit, vigorously defended by both Kinney and Millsap, resulted in a decree sustaining Pollak's right to redeem and fixing the amount he must pay to obtain a reconveyance. This amount Pollak arranged to deposit. On October 22, 1931, the Supreme Court, correcting the decree by requiring the payment of an additional sum to be paid in within ninety days to effect the redemption, and, if not, the cause to be dismissed, affirmed it. By this time the property, caught in the collapse of real estate values, had declined to a value of around $2,600, and when Pollak was notified that in addition to the $6,855 he had already put up he must put up $1,300 more in order to redeem, it was decided that Pollak "could not, well, would not, raise the amount necessary to pay it." His counsel, Cooper, got in touch with Edmundson, counsel for Millsap, and told him of "our decision to let the matter go by default and draw down the amount we had paid into court already." Edmundson came to Cooper's office and talked the

matter over. He asked how much the Pollaks would sell the land for in case he (Edmundson) could get a buyer who would pay enough money in so that the Pollaks could comply with the Supreme Court's decree. Shortly afterward Mr. White Gibson, who, as Millsap's counsel, filed this warranty suit, furnished Cooper one Woodruff as a purchaser, for $10,000, $5,000 cash and $5,000 notes. Millsap having some months before surrendered possession of the property, Woodruff on January 19, 1932, took a deed for it, from the Pollaks, and within the ninety days paid into the registry the additional amount, which Millsap accepted as sufficient. A few days later, in the early part of February, White Gibson, who had acted for Woodruff in the sale transaction, filed suit for Millsap on Kinney's warranty. On March 12, 1932, Kinney, who had refused to take down his part of the amounts tendered into court, on the ground that they were insufficient, moved the Supreme Court to dismiss the bill for failure to redeem within the time fixed. Both Millsap's and Pollak's counsel appeared in opposition to this motion; in fact, Millsap's counsel, Edmundson, conducted the defense in the Supreme Court. On April 9, 1932, that court sustained Kinney's position that Pollak had made an insufficient payment, but it allowed thirty days more to pay the additional sum. This amount, $129.87, was advanced through Gibson by crediting it on Woodruff's notes. Neither Gibson, Edmundson, Pollak, nor Woodruff gave testimony in the cause, and it stands admitted as Cooper has testified to it, that there would have been no redemption had not Edmundson, Millsap's counsel in the Pollak suit, through the medium of Gibson, Millsap's counsel in this suit, made the arrangements which made it possible and brought it about. Millsap did indeed testify: "I did not furnish any of the money or know anything about it, that was paid into court in January. I did not have anything to do with paying the money when they claimed it was finally redeemed through Mr. White Gibson. I did not either directly or through my attorney, Mr. White Gibson, pay that money on April 9th." He did not, however, testify that Edmundson did not represent him in inducing Pollak not to abandon the redemption and take his money down. He testified that White Gibson represented him in his warranty suits against Kinney; that he brought two, one in February, which he dismissed, and another when the Supreme Court rendered the last decree. That he abandoned possession in the fall of 1931 on Mr. Edmundson's advice. That Mr. Edmundson was his attorney. "Mr. Edmundson first began to represent me in the redemption suit filed by the Pollaks two years after the purchase of it in 1927, and he continued to represent me throughout."

At the conclusion of the evidence the defendant moved for a directed verdict. The District Judge thought plaintiff entitled to recover unless Millsap colluded to bring about a breach of Kinney's covenants. He thought this a fact issue for the jury. He thought Millsap's surrender of possession before the redemption decree became final in April, in itself no obstacle to Millsap's suit. He thought, too, that Millsap's opposition to Kinney's motion, entered after Millsap had accepted the money in the registry, was no bar to this suit, unless it was part of a collusive plan to rid himself of the depreciated land in order to recover on Kinney's warranty. He therefore fully instructed the jury that it was Millsap's duty not to collude with the Pollaks in order to defeat the title Kinney had conveyed to him. He particularly advised them that if they believed that the Pollaks were not able to accomplish the redemption for financial reasons, and that Millsap being desirous that the redemption should be accomplished, aided and abetted in furnishing the money, they should find for Kinney.

Defendant is here complaining of the failure to instruct a verdict. He maintains that the evidence is conclusive that Millsap defeated his own title, brought about his own loss. There can be, there is, no doubt that Millsap owed Kinney a duty of good faith, and that if he brought about the redemption by inducing Pollak to complete it, and aiding him to do so after Pollak had announced his intention to abandon it, he cannot recover. Hester v. Hunnicutt, 104 Ala. 282, 16 So. 162; Rancho Bonito Land & Live-Stock Co. v. North, 92 Tex. 72, 45 S. W. 994; Hamilton v. Farmer, 173 Ark. 341, 292 S. W. 683; Tuggle v. Hamilton, 100 Ga. 292, 27 S. E. 987; Congregation of Sisters v. Jane, 110 Miss. 612, 70 So. 818–820.

The only question in the case is whether the evidence, as matter of law, shows that he did this. Appellee points to his testimony that he furnished no money, and that he knew nothing about the transaction his attorneys Edmundson and Gibson were carrying on. He points, too, to the verdict of the jury accepting this testimony. We do not think that this will do. What he testified to, and what the jury found, was that he did not in person collude. They did not find, they could not have found, that he did not collude through

580

his attorneys Edmundson and Gibson; that he did not, through them, aid and assist in bringing about a breach of the covenants. It stands admitted on the record that but for Edmundson's counter persuasion, Pollak would have abandoned his redemption suit and taken down his tender, and the title would not have failed. It stands admitted on the record that but for Edmundson's having procured a purchaser through Gibson's offices for a little more, on its face, than the amount necessary for redemption, Pollak could not have effected the redemption for want of funds. It stands further admitted on the record that when the last payment was due to be made Pollak had no funds to make it with, and Gibson, Millsap's attorney in the warranty suit then pending, furnished the additional sum. It is mere quibbling to say that Millsap did not himself do what his counsel did for him. Edmundson was Millsap's general counsel throughout the first suit; Gibson, his adviser and counselor in the second. These two, having no interest to serve or motive for action except the representation of their client Millsap, together brought about this redemption when, the property having so declined in value as to be worth far less than the redemption money, Pollak was going to dismiss his suit and take his money down. They not only induced him to go on, they went on for him. They furnished the very moneys necessary to redeem.

Unless it can be contended, and we think it plain that it cannot, that Millsap can take the benefit of the acts of his counsel in bringing about the redemption by which he got nearly $7,000 in money and the suit on Kinney's warranty, in lieu of a tract of land worth, by the testimony, $2,600, without the burdens, their acts are his acts. As the record stands there was no issue of fact for the jury. It stands admitted there that but for the acts of Edmundson and Gibson the incumbrance of Pollak's right to redeem would, on January 22d, have entirely disappeared, Millsap would have held the title conveyed to him free of defect or incumbrance, and there would have been no breach. It stands admitted on the record that the only reason the redemption occurred was that Millsap's counsel, acting for him, preferred the redemption money and the suit on the warranty, to the property. They went about to get these for him and got them. Their collusion was Millsap's.

The judgment is reversed, and the cause remanded for further proceedings not inconsistent herewith.