SECURITY BANK *v.* DAVIS.

4-8719                                          224 S. W. 2d 25

Opinion delivered October 10, 1949.

Rehearing denied November 28, 1949.

*Gordon Armitage,* for appellant.

*J. E. Lightle, Jr.,* for appellee.

Ed. F. McFADDIN, Justice. This is an appeal from a Chancery decree which (a) allowed appellant no relief and (b) sustained the cross-complaint of the appellee, D. C. Davis, for reformation of his deed to appellant.

In 1929 D. C. Davis executed notes to Peoples Bank totalling $10,181.77, and secured by a deed of trust on 537 acres of land. Included in the deed of trust was the 80-acre tract involved in the present suit and hereinafter referred to as the "80-acre tract." The Peoples Bank knew that D. C. Davis owned only a life estate in this 80-acre tract, and that the remainder was owned by the Davis children, who joined in the execution of the deed of trust, but without becoming personally liable for the indebtedness. (For brevity, we will continue to refer to them as the "Davis children," although they were and are adults.) The said notes of D. C. Davis to the Peoples Bank were acquired by the Security Bank some time prior to 1939 with all the notice and knowledge possessed by the Peoples Bank.

In 1939 D. C. Davis, being unable to pay the balance due on the notes, on demand of the Security Bank (hereinafter called "Bank") executed to it a general warranty deed for 388 acres of the land in full settlement of all the balance due on the notes. Included in the 388 acres there was the 80-acre tract in which, as aforesaid, D. C. Davis owned only a life estate. The Davis children did not join in the deed. The Bank surrendered all the notes and other security to D. C. Davis, and entered into possession of the 388 acres described in the warranty deed.

In 1947 the Bank filed the present suit against D. C. Davis and the Davis children, seeking *inter alia,* to have the Bank's title quieted and confirmed to the 80-acre tract. The Davis children by answer and cross-complaint (1) alleged that the Bank held only the life estate of D. C. Davis and (2) prayed that their title be quieted except as to the said life estate. The Bank then by amended complaint prayed (1) that as to the Davis children the Bank be held to be a mortgagee in possession of the 80-acre tract, or (2) that as against D. C. Davis

the Bank recover damages for the breach of his covenant of general warranty as to the 80-acre tract in the 1939 deed. D. C. Davis by proper pleading alleged (1) that the Bank knew he had only a life estate in the 80-acre tract, and (2) that a mutual mistake had occurred in the preparation and execution of the 1939 deed. He prayed that the deed be reformed to show that he conveyed and warranted only a life estate in the 80-acre tract.

Upon the trial of the issues the Chancery Court (1) dismissed the Bank's complaint and amended complaint, and (2) found for D. C. Davis on his cross-complaint and decreed a reformation of the 1939 deed to show that D. C. Davis conveyed and warranted only a life estate to the 80-acre tract. The Bank has appealed.

I. *Reformation.* We hold that the learned Trial Court erred in decreeing the said reformation of the 1939 deed. The cases hold that a court of equity will not reform a written instrument on account of mutual mistake, unless the proof of such mistake be clear, unequivocal and decisive. See *McGuigan* v. *Gaines,* 71 Ark. 614, 77 S. W. 52.[1] The evidence in the case at bar does not measure up to the standard required by our holdings. D. C. Davis testified:

"Q. What did you think you were conveying on the eighty—your full title?

A. To be fair, I didn't know whether it had the eighty acres; I just signed these papers and I turned it over to him,[2] and he said it ought to have been done ten years ago.

Q. You say you don't know the difference between a warranty deed and a quitclaim deed?

A. Yes, sure, it reads on the back of it.

Q. It reads on the back and tells you what it is?

A. Yes.

---

[1] Other cases so holding are collected in West's Arkansas Digest, Reformation of Instruments, § 45.

[2] The "him" referred to is the representative of the Bank who handled the transaction with Davis.

Q. When you signed that, you knew it was a warranty deed, didn't you?

A. Sure, I knew it was a warranty deed.

Q. And you signed that deed knowing it was a warranty deed, and conveying that property to the bank to get the thing settled?

A. They simply fixed that up.

Q. Did you read that deed?

A. No, I didn't read it.

Q. You had a chance to read it?

A. No, he said, 'I have all the papers here; just sign it and I will give you your notes'; and he gave me the ten thousand dollars worth of notes.

Q. Did you read the deed?

A. No, sir, I didn't read it?

Q. You can read, can't you?

A. Yes, sir.

Q. And you knew it was a warranty deed?

A. I knew it was a deed to turn that stuff loose; I supposed it was a warranty deed.''

The person who represented the Bank in the 1939 transaction is now deceased, and no other witness gave any stronger testimony for reformation than what has been quoted above. In short, the evidence as to any mutual mistake fails to be "clear, unequivocal and decisive"; so the decree awarding D. C. Davis a reformation is reversed.

II. *The Bank's Claim Against the Davis Children.* The Bank is not entitled to have its title quieted as against the Davis children. They were remaindermen after the life estate of D. C. Davis; they were not personally obligated on the debt; and there is no evidence that they authorized D. C. Davis to convey their interest to the Bank by the 1939 deed. The Bank's possession of

the land under the 1939 deed was not adverse to the Davis children, and the statute of limitations does not begin to run against the remaindermen during the continued life of the life tenant. *LeSieur* v. *Spikes,* 117 Ark. 366, 175 S. W. 413; *Kennedy* v. *Burns,* 140 Ark. 367, 215 S. W. 618.

III. *The Bank's Claim to Be Mortgagee in Possession.* The Bank is not entitled to any relief, as regards the remaindermen, on its claim that it became a mortgagee in possession when it took the deed from D. C. Davis in 1939 and entered into possession of the 80-acre tract. One sufficient reason for this holding is that the Bank did not take possession of the land under its mortgage, but as a purchaser under the general warranty deed, and has stoutly maintained that there was no mistake in the said deed. In *Williams* v. *Wallace,* 111 Ark. 509, 164 S. W. 301, we held that the relation of mortgagee in possession[3] would not arise unless the taking of possession was done as mortgagee. Such is not shown to exist here. Neither was there a void or defective foreclosure as in *Lesser* v. *Reeves,* 142 Ark. 320, 219 S. W. 15.

IV. *Damages for Breach of Warranty.* The Bank claims that it is entitled to recover damages from D. C. Davis for breach of the covenant of warranty as contained in the 1939 deed; and with this contention we agree. The Bank's claim for damages is not premature. The case at bar is not so similar to the cases of *Deupree* v. *Steed,*[4] *Belleville Land & Lbr. Co.* v. *Griffith,*[5] or *Hamilton* v. *Farmer*[6] as to be ruled by them. Here, the Bank made the remaindermen (the Davis children) parties to the suit; and when they set up their title as remaindermen and prayed that it be quieted, then the Bank sought damages from D. C. Davis for breach of warranty; and the decree of the court in effect found for the remaindermen. These facts differentiate this case from those just cited, and constitute sufficient constructive eviction to prevent the action from being premature.

---

[3] Other cases concerning mortgagee in possession are collected in West's Arkansas Digest, Mortgages, § 199. See also 41 C. J. 612.

[4] 298 S. W. 494, 174 Ark. 1179.

[5] 177 Ark. 170, 6 S. W. 2d 36.

[6] 173 Ark. 341, 292 S. W. 683.

Equity, having taken jurisdiction in the cross-complaints of the various parties, should retain jurisdiction for all purposes and do complete justice between the parties.[7] So, the Bank is entitled to recover damages from D. C. Davis for breach of the covenant of warranty.

V. *Amount of Damages.* The Bank failed to prove any damages. There was no proof as to the value of the land, the life estate, the remainder, or the value of this 80-acre tract as compared with the other lands in the deed. In short, there was an entire absence of any proof of damages. In *Seldon* v. *Dudley E. Jones Co.*, 89 Ark. 234, 116 S. W. 217, we held that if the covenantee failed to prove any actual damages; then he could recover only nominal damages; and the rule of that case applies to the case at bar. Furthermore, in *Bass* v. *Starnes*, 108 Ark. 357, 158 S. W. 136, and *Dilley* v. *Thomas*, 106 Ark. 274, 153 S. W. 110, we held that when the plaintiff is entitled to nominal damages only, judgment will be rendered in this Court for such nominal damages and costs.

Therefore the judgment of the Chancery Court is reversed and the judgment is rendered here for appellant and against appellee, D. C. Davis, for nominal damages of one dollar for breach of the covenant of warranty; and this judgment carries with it all the costs of this case in both courts.

---

[7] For a collection of cases recognizing and enunciating this well-known rule of equity, see West's Arkansas Digest, Equity, § 39.