Beth Marie RIDDLE, Julia A. Riddle, and Beth Marie Riddle Representing the Interest of Joseph H. Riddle, Sr., Deceased  *v.* Richard J. UDOUJ, as Special Administrator for the Estate of Olivia K. Udouj, Deceased, and Michael A. Udouj and Richard J. Udouj, Trustees of the Olivia K. Udouj Trust Dated February 18, 1983

07-538                                                      267 S.W.3d 586

Supreme Court of Arkansas

Opinion delivered November 8, 2007

[Rehearing denied December 6, 2007.]

Sam Sexton, III, for appellants.

*Warner, Smith & Harris, PLC*, by: *Douglas O. Smith, Jr., Stephanie Harper Easterling*, and *Robert A. Frazier*, for appellees.

ROBERT L. BROWN, Justice. Appellants Beth Marie Riddle, et al. ("the Riddles") appeal the grant of summary judgment in favor of appellees Richard J. Udouj, et al. ("the Udoujes") and assert that the court erred in deciding the Riddles' claims regarding breach of the warranties of title and quiet enjoyment and constructive fraud based on the running of the respective statutes of limitations. We affirm the circuit court.

On May 30, 1996, the Riddles purchased a home in a residential neighborhood from the Olivia K. Udouj Trust. As part of that conveyance, Olivia Udouj provided a property disclosure, which stated in relevant part that: (1) there were no "features of the Property shared in common with adjoining landowners, such as walls, fences and driveways, the use or responsibility for which may have an effect on the property"; and (2) there were no "encroachments, easements, leases, liens [sic] adverse possession claims or similar matters that may affect the title to the Property." Prior to completing the purchase, the Riddles obtained a survey of the property, which indicated that the property described by the legal description extended several feet beyond the fences that lay to the north and the east of the property. These fences had been built in the 1950s by Olivia Udouj and her husband.

Sometime after purchasing the property, the Riddles began altering the landscaping to the east of the fence, leading the property owners to the east, Conrad F. Kaelin and Ava Paulette Kaelin ("the Kaelins"), to hire an attorney, who sent the Riddles a letter dated May 26, 1998, demanding that the Riddles not remove the existing fence or disturb any landscaping to the east of the fence. In July of 2000, the Riddles made additional changes to the landscaping east of the fence, removing trees, bushes and tulip plants and prompting the Kaelins' attorney to send the Riddles

another letter.[1] After a December 2000 ice storm, the Riddles had tree limbs removed from trees located to the north of the fence.

On June 18, 2001, the Riddles filed suit against the Kaelins in circuit court, seeking to quiet title to the disputed property east of the fence as per their survey. The Kaelins counterclaimed, asserting that the fence existing at the time the Riddles acquired the property described the boundary line by acquiescence. In 2002, the Riddles removed the northern fence and began constructing a new fence four feet to the north at what they alleged to be the true property line. This prompted the property owners to the north of the Riddles, Cecil Knight and Robbie Mae Knight ("the Knights"), to move to intervene in the lawsuit and seek to quiet title to the property to the north of the original fence. On October 15, 2002, the circuit court entered judgment in which it concluded that the old fence lines established by acquiescence the boundaries between the Riddles' land and the Knights' and Kaelins' land.

On January 13, 2005, the Riddles filed suit against the Udoujes and alleged breach of contract through breach of warranty of title, breach of warranty of quiet enjoyment, and breach of warranty to defend title. The Riddles also alleged constructive fraud by Olivia Udouj based on the representations she made in the property disclosure.[2]

On February 16, 2006, the Udoujes moved for summary judgment and argued that the Riddles' claims were barred by the statute of limitations. The Riddles responded that the statute of limitations for their claims of constructive fraud and breach of the warranties of title and quiet enjoyment did not begin to run until the entry of the circuit court's October 15, 2002 order, and, thus, their complaint was timely. Following a hearing on the motion, the circuit court found that the existence of hedges and landscaping on the disputed property to the north and east of the fence, when coupled with the Kaelins' May 26, 1998 letter to the Riddles, triggered the running of the statute of limitations for both

---

[1] On November 17, 2000, the Riddles recorded a deed conveying the property to their daughter, Julia Riddle.

[2] Joseph Riddle, Sr. and Olivia Udouj died in early 2005. On May 13, 2005, the circuit court entered an order substituting Beth Riddle as the party representing Joseph Riddle's interest and James Shoffey as a special administrator representing the interest of Olivia Udouj. The role of special administrator is currently filled by Richard J. Udouj.

the breach of warranty and constructive fraud claims. An order to this effect was entered on April 24, 2006. The Riddles appealed. On May 9, 2007, the Arkansas Court of Appeals affirmed the circuit court's order. *See Riddle v. Udouj*, 99 Ark. App. 10, 16-17, 256 S.W.3d 556, 560 (2007). On May 25, 2007, this court granted the Riddles' petition for review.

After granting a petition for review, this court considers the case as if it had originally been filed in this court. *VanWagner v. Wal-Mart Stores, Inc.*, 368 Ark. 606, 608, 249 S.W.3d 123, 124 (2007). The standard used by this court when reviewing a circuit court's grant of summary judgment is well established:

> Summary judgment is to be granted by a trial court when it is clear that there are no genuine issues of material fact to be litigated, and the party is entitled to judgment as a matter of law. Once the moving party has established a prima facie entitlement to summary judgment, the opposing party must meet proof with proof and demonstrate the existence of a material issue of fact. On appellate review, we determine if summary judgment was appropriate based on whether the evidentiary items presented by the moving party in support of its motion leave a material fact unanswered. This court views the evidence in a light most favorable to the party against whom the motion was filed, resolving all doubts and inferences against the moving party. Our review is not limited to the pleadings, as we also focus on the affidavits and other documents filed by the parties. After reviewing undisputed facts, summary judgment should be denied if, under the evidence, reasonable persons might reach different conclusions from those undisputed facts.

*Lewis v. Mid-Century Insurance Company*, 362 Ark. 591, 594, 210 S.W.3d 113, 115 (2005) (citations omitted).

The Riddles first assert that the statute of limitations did not begin to run on their breach-of-the-warranties-of-title and quiet-enjoyment claims until the court entered an order in October 2002, holding that the disputed property did not belong to the Riddles. It was only at that time, they argue, they were evicted from the disputed property. Until that time, they contend, they continued to use and enjoy the land. The Riddles claim, in addition, that their knowledge that their neighbors disputed their title to the land was insufficient to constitute eviction and was merely notice of a claim of paramount title. At the very least, they maintain, there was a disputed issue of fact regarding the date of eviction, which renders summary judgment inappropriate.

The Udoujes concede that in some cases an eviction is effected by the entry of a judgment. They contend, however, that a judgment was not needed to evict the Riddles in the case at hand. On the contrary, the Udoujes assert that the Riddles were never in possession of the disputed land and were constructively evicted on the date the property was conveyed to them in 1996, which triggered the statute of limitations. This constructive eviction, the Udoujes assert, was effected by the encroaching fence lines, which were visible and obvious. The Udoujes also point out that the Riddles knew from a survey that the fences were inside the boundaries described in their deed.

If these facts alone are insufficient to evict the Riddles constructively, the Udoujes argue that they should be considered in conjunction with the letter the Kaelins' attorney sent to the Riddles in 1998, which directed them to cease all activities east of the original fence. They further contend that the hostile assertion of title contained in the letter, when combined with the visible encroachments, constituted a constructive eviction. According to the Udoujes, this constructive eviction was not overcome by the limited use of the disputed property that the Riddles continued to have.

As a final point, the Udoujes urge that the issue of whether the Riddles had possession of the property was conclusively decided when the circuit court found in 2002 that the boundary lines of the property had been established at the original fence lines by acquiescence. They argue that, as a result, the Riddles are barred by issue preclusion from relitigating the boundary-line issue.

The statute of limitations for breach of a warranty is five years. Ark. Code Ann. § 16-56-115 (Repl. 2005). It is well established that the mere existence of superior title, whether or not the grantee has notice of its existence, is insufficient to constitute breach of a warranty. *Hamilton v. Farmer*, 173 Ark. 341, 344-45, 292 S.W. 683, 684-85 (1927). Rather, a cause of action for breach of a warranty accrues and the statute of limitations begins to run only when the grantee is evicted or constructively evicted from the conveyed property. *Thompson v. Dildy*, 227 Ark. 648, 651, 300 S.W.2d 270, 272 (1957) ("With some exceptions, the rule is that an action for damages on a covenant of warranty cannot be maintained where there has been no eviction."); *Hamilton*, 173 Ark. at 344-45, 292 S.W. at 684-85 ("[A]n outstanding paramount title is not an eviction and does not of itself constitute a breach of

the warranty. . . . [T]he existence of [] paramount title itself would not constitute an eviction nor entitle the appellant to bring suit against the grantors.").

Eviction occurs when a person is dispossessed by process of law. *Black's Law Dictionary* 594 (8th ed. 2004). Constructive eviction, on the other hand, occurs when a purchaser is unable "to obtain possession because of a paramount outstanding title." *Id.* at 594. Therefore, the question in the case at hand concerns whether the Riddles were constructively evicted from the disputed property at some time before the 2002 order was entered.

Neither the bench ruling in the instant case nor the subsequent order of the circuit court contains an explicit finding that the Riddles were constructively evicted at the time of conveyance. The court noted that the existing landscaping "wouldn't necessarily have triggered the Buyer's response to clarify that issue." The circuit court did, however, go on to note that the existing landscaping, when combined with the cease and desist letter sent by the Kaelins, was sufficient to put the Riddles on notice of a problem with their title.

■ As an initial matter, we conclude that the circuit court's reasoning is flawed. The Kaelins' letter could only have put the Riddles on notice of a competing claim to the land. It could not effect an eviction if the Riddles were currently in possession of the property. This court's case law is clear that notice of a claim is not the standard for commencing the running of the statute of limitations in a breach-of-warranty action. *Elliott v. Elliott*, 252 Ark. 966, 972, 482 S.W.2d 123, 127 (1972) (analyzing Texas law and noting the distinction between notice of a pending suit and constructive eviction). Nonetheless, this court can affirm a circuit court that has reached the correct conclusion, albeit for the wrong reason. *Middleton v. Lockhart*, 355 Ark. 434, 439, 139 S.W.3d 500, 503 (2003).

This court has examined the issue of when a covenant of warranty is breached by a constructive eviction on several occasions. In *Smiley v. Thomas*, we held that the ownership of a one-half undivided oil and gas interest by a third party at the time property was conveyed to a grantee did not amount to an immediate breach of the grantor's warranty. 220 Ark. 116, 121, 246 S.W.2d 419, 421 (1952). Instead, this court found that "[t]here had been no constructive eviction, in effect, until the present suit was filed in December, 1950, wherein [grantor] was a party and the court held

. . . that [a third party] owned the 1/2 mineral interest in the land involved here and that the covenant of warranty in the above deed had been breached." *Id.*[3] Accordingly, the cause of action for breach of warranty did not accrue nor the statute of limitations begin to run until that time. *Id.*

Where, however, there is a visible, physical encroachment on the complainant's land, a constructive eviction may occur long before a court finds that title is held by a third party. In *Timmons v. City of Morrilton*, the grantee of a piece of property sued the grantor, claiming that "obstacles and obstructions" that the grantor had erected before the conveyance "prevented [grantee] from full possession of the property described in the deed." 227 Ark. 421, 422, 299 S.W.2d 647, 648 (1957). This court held that, "[w]hen the land conveyed is at that time in possession of a stranger, the covenant is broken the date the deed is made, and limitations commence immediately." *Id.* at 423, 299 S.W.2d at 649. This court noted that "[a]ny obstruction or encroachments involving the property [the grantor] conveyed to [the grantee] existed prior to and at the time of the delivery of the deed and were visible and obvious, so there was a constructive eviction the day of the deed." *Id.* at 422, 299 S.W.2d at 648. We concluded that the statute of limitations began to run immediately upon conveyance. *Id.* at 423, 299 S.W.2d at 649.

In still another case, *Van Bibber v. Hardy*, this court found that a property owner could be evicted by the presence of a tenant on the property with a superior right to possession. 215 Ark. 111, 118, 219 S.W.2d 435, 439 (1949). A court order confirming the tenant's superior possessory right was not required for a cause of action for breach of warranty to accrue. *Id.* Likewise, in *Bosnick v. Hill*, this court noted that where a third party had fenced in a portion of the conveyed land and run cattle on it, the grantee never obtained possession of the disputed property, and the covenant of seisin was breached immediately upon conveyance. 292 Ark. 505, 508-09, 731 S.W.2d 204, 206-07 (1987).[4]

---

[3] Though it couches its holding in terms of a constructive eviction, the *Smiley* court appears to have analyzed the issue using the definition for an actual eviction.

[4] We note that a covenant of warranty such as we have in the instant case and a covenant of seisin are not one and the same. *Black's Law Dictionary* 393 (8th ed. 2004). In the case at hand, the Riddles have not asserted a breach of the covenant of seisin. Nonetheless, the

Turning to the situation in the instant case, it is clear to this court from our case law that physical encroachments may result in a constructive eviction. For example, where a home or other building encroaches into a neighbor's yard, the record owner has been dispossessed of that portion of the yard. *See Nunley v. Orsburn*, 312 Ark. 147, 150, 847 S.W.2d 702, 704-05 (1993) (holding that construction of a storage shed constituted possession sufficient to establish a boundary by acquiescence). Likewise, if a person builds a fence or wall completely surrounding his or her home and in so doing encloses a portion of their neighbor's yard, the record owner has been dispossessed. *See Bosnick*, 292 Ark. at 508-09, 731 S.W.2d at 206-07. Such an encroachment need not completely foreclose the possibility of physical entry in order to result in constructive eviction. *See, e.g., id.* In *Bosnick*, there was no indication that the fence involved was unscalable. *Id.*

■ The Riddles claim that the visible, physical encroachments onto the disputed property were not sufficient to prevent their possession of that property. We disagree. Not only were there visible fences establishing the boundary, but the adjacent property owners, the Kaelins and the Knights, were using the disputed property as their own on the date of conveyance. The maintenance of shrubs and other landscaping is the normal use of a residential yard, and it is to this use that the Kaelins and Knights were putting the disputed property at the time of the conveyance. The Riddles undoubtedly made attempts to regain possession of the disputed property by the legal process and by entering their neighbors' yards for landscaping activities. None of these attempts, however, change the fact that, as of the date of the conveyance, the disputed property was possessed by third parties, the Riddles were constructively evicted, and the warranties of title and quiet enjoyment were breached.

■ We further underscore the fact that in 2002, the circuit court found that a boundary by acquiescence had been established by the existing fence. That precise issue cannot now be relitigated, as it is an issue that has been decided. *Riverdale Dev., LLC v. Ruffin Bldg. Sys. Inc.*, 356 Ark. 90, 96, 146 S.W.3d 852, 855 (2004). We affirm the circuit court and its order of summary judgment based

---

*Bosnick* court's discussion is applicable to this because both breach of the covenant of seisin and breach of a covenant of warranty by constructive eviction are decided on the basis of who has possession.

on the fact that a constructive eviction occurred due to the breach of the respective warranties as of the date of conveyance in 1996 and the limitations period had expired when the Riddles' complaint against the Udoujes was filed in 2005. Our holding of constructive eviction is based on the fact that at the time of the 1996 conveyance, the existing fences and shrubbery dispossessed the Riddles of part of the land conveyed to them.

The Riddles next claim that when Olivia Udouj signed the owner property disclosure, which asserted that no fences were shared in common with adjoining landowners and that there were no encroachments that might affect the title to the property, she committed constructive fraud. The statue of limitations for this fraud, they argue, was tolled until they discovered or should have discovered the fraud. The Riddles further assert that this did not occur until the circuit court ruled in 2002 that the disputed property did not belong to the Riddles, because up until that time, the Riddles believed that their title to the disputed property was good. To hold otherwise, they contend, would require landowners with disputed title to sue prior landowners before it is clear that an adverse claim will succeed.

The statute of limitations for a constructive fraud claim is three years. Ark. Code Ann. § 16-56-105 (Repl. 2005). More than three years have elapsed since the commission of the alleged fraud. Therefore, the burden is on the Riddles to show that the statute of limitations was tolled. *Scollard v. Scollard*, 329 Ark. 83, 87, 947 S.W.2d 345, 347 (1997).

Tolling occurs when the person alleged to have committed the fraud has committed a "positive act of fraud, something so furtively planned and secretly executed as to keep the plaintiff's cause of action concealed, or perpetrated in a way that it conceals itself." *Hampton v. Taylor*, 318 Ark. 771, 778, 887 S.W.2d 535, 539 (1994). It is a fraud that a plaintiff, by reasonable diligence, could not have detected or had reasonable knowledge. *Id.*

The Riddles, however, have failed to produce any evidence that Olivia Udouj engaged in any act designed to conceal her alleged misrepresentation. On the contrary, the Riddles were aware of all material facts surrounding the alleged fraud, including the fact that the existing fences were inside the property line described by the survey, before taking possession of the land. We hold that the Riddles have failed to meet their burden of showing that the statute of limitations was tolled, and we further hold that

the circuit court correctly concluded that the statute of limitations on the fraudulent concealment claim had expired.

Affirmed.